**James G. DiCOSTANZO, in behalf of himself and all others similarly situated**

v.

**CHRYSLER CORPORATION et al.**

**Civ. A. No. 70–3331.**

United States District Court,
E. D. Pennsylvania.

Nov. 16, 1972.

David Berger, Philadelphia, Pa., for plaintiff.

Robert S. Ryan, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

On December 3, 1970, James J. DiCostanzo (DiCostanzo), the plaintiff, filed a complaint on behalf of himself and all other similarly situated automobile dealers from 1963 to the present who have been granted a franchise to sell or lease and service motor vehicles manufactured and distributed by Chrysler Corporation (Chrysler) under Chrysler's Dealer Enterprise Plan. By a proposed amendment to the complaint, plaintiff seeks to widen the class to embrace all persons or entities who were dealers in Chrysler automotive products. The complaint alleges violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–7 and §§ 3 and 7 of the Clayton Act, 15 U.S.C. §§ 12–27. Count IV is brought pursuant to the anti-fraud provisions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and Rule X–10b–5 promulgated under that Act, 17 C.F.R. § 240.10b–5.[1]

The defendants have denied all allegations of wrongdoing. Counterclaims based, inter alia, on mismanagement, preparation of false financial statements, receipt of kickbacks, and refusal to repay borrowings have been asserted against plaintiff.

The matter is presently before the Court for an Order that this action is maintainable as a plaintiff's class action pursuant to Fed.R.Civ.P. 23(c)(1). For the reasons appearing below, the Court denies plaintiff's motion.

■ In order for this suit to be maintained as a class action, the plaintiff must meet the requirements of Rule 23(a) and Rule 23(b)(3).[2] The plaintiff has the burden of showing that his proposed class falls within the requirements of the rule. Katz v. Carte Blanche Corp., 52 F.R.D. 510 (W.D.Pa. 1971); City of Philadelphia v. Emhart Corp., 50 F.R.D. 232 (E.D.Pa.1970).

---

1. The present issues are centered on the antitrust and securities allegations, however, plaintiff alleges violations of the Lanham Trade Mark Act, 15 U.S.C. §§ 1051 et seq., and the Dealer's Day in Court Act, 15 U.S.C. § 1221 et seq. Additionally, pendent jurisdiction is asserted over certain non-federal claims of fraud, breach of contract, breach of fiduciary duty, and interference by defendants with the business and reasonable expectancies of plaintiff and the members of the class.

2. "Rule 23. Class Actions
   (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
   * * *
   (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: * * *
   (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

## The Factual Background

Most automotive dealerships are owned by individuals or corporations who have no financial connection with any manufacturer. These may be referred to as "private capital" dealers. Early in the 1960's, Chrysler established a nationwide group of dealerships that involve equity participation by Chrysler. These are referred to as "dealer enterprise" dealers.

James G. DiCostanzo, the plaintiff in this action, served as president and manager of Natick Dodge, Inc., a dealer enterprise dealership located in Natick, Massachusetts, just west of the Boston area. The basic relationship between the plaintiff and Chrysler, including Natick Dodge, Inc., included the following:

(1) A dealership agreement between Chrysler and Natick Dodge, Inc., the dealership corporation. This agreement sets forth the terms and conditions with respect to the general operations of a Chrysler dealership. It is signed by James G. DiCostanzo, in his capacity as President of Natick Dodge, Inc.[3]

(2) Stock and Escrow Agreements between plaintiff and Chrysler regulating, inter alia, the rights of the parties with respect to the ownership and control of Natick Dodge. This agreement provides for the dealer's employment as manager of the dealership and describes the dealer's and Chrysler's equity interest in the dealership corporation. It gives the dealer enterprise dealer the opportunity to buy out Chrysler's interest and become the sole shareholder of the dealership corporation. The agreement further provides that as long as Chrysler has an equity interest they hold all voting rights and that they may use such voting power to remove the Manager as a Director and President of Natick Dodge, Inc. An addendum to this agreement indicates that Chrysler lent James G. DiCostanzo $15,000 to be used to purchase shares of Common Stock of Natick Dodge, Inc. Two amendments to the addendum would indicate additional loans were made by Chrysler for a similar purpose.

Natick Dodge, Inc., was not financially successful. Plaintiff did not purchase Chrysler's interest in the dealership and, in due course, he was removed as a Director, President and Manager of Natick Dodge, Inc.

During the entire period from 1963 through 1970, there were, cumulatively, approximately 600 "dealer enterprise" dealerships in the United States. In any one year, these constituted approximately 5% of the total number of dealerships selling Chrysler automotive products.[4] The plan as envisioned by Chrysler, was the formation of separate dealership corporations involving equity participation by Chrysler. The equity interest of Chrysler was to be reduced over a period of time until the manager became the sole owner of the dealership. During the period in question it is indicated that the entire interest of Chrysler Motors in 144 "dealer enterprise" dealerships was sold, either to the manager or to others.[5]

## Class Action Question

■ Of particular relevance to plaintiff's right to represent a class of franchised automobile dealers is the requirement that the class claims have a domi-

---

3. In Chrysler's brochure outlining the Dealer Enterprise Plan, they state:
"Chrysler-financed dealerships are subject to the same sales agreements, Corporate plans, policies, programs, etc., as are all privately-financed dealerships. They are shown no favoritism, nor are they used for experimental purposes. The Vehicle Divisions deal with Chrysler-financed dealerships on exactly the same basis as they do privately-financed dealerships."

4. Affidavit of Paul A. Heinen, Secretary of Chrysler Corporation, ¶ 3.

5. Ibid, ¶ 4.

nant, central focus. Claims which turn on evidence concerning the history of many different dealerships simply would not, as a rule, easily fit the requirements of Fed.R.Civ.P. 23, which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."[6] The matters pertinent to such a finding requires the court to consider whether:

(a) the members of the class should control their own claims;

(b) a class action will be superior, or manageable;

(c) the litigation should be concentrated in the one forum; or

(d) an adjudication will be dispositive as to the class.[7]

The determination of the issues presented by this group of criteria normally will turn on the answer to one basic question; will the evidence involved in the claim be focused on central factual disputes, or is an assessment of facts relating to each dealership required? Is there an essential common factual link as between the class members and the defendant for which the law provides a remedy? Consistent with this, class actions have been barred where evidence pertaining to individual franchisees is necessary to resolve a claim of vertical price fixing; Chicken Delight, Inc. v. Harris, 412 F.2d 830 (9th Cir. 1969); where an antitrust action turns on proof of coercion with respect to a number of dealers; Lah v.

Shell Oil Co., 50 F.R.D. 198 (S.D.Ohio 1970); where a claim involved an assessment of differing bid procedures: William Goldman Theatres, Inc. v. Paramount Film Distributing Corporation, 49 F.R.D. 35 (E.D.Pa.1969); where alleged misrepresentations with respect to the sale of securities to a class of purchasers requires independent proof as to each member of the class: Hirschi v. B. & E. Securities, Inc., 41 F.R.D. 64 (D.Utah 1966).[8]

Plaintiff, in this case, has submitted a complaint which consists, essentially, of a check list of every conceivable grievance involving an automobile dealership, the resolution of which would require a detailed review of almost every aspect of the history of each dealership. However, two prominent claims with respect to alleged illegal "tying" agreements and "conspiracy" to violate the antitrust laws between Chrysler and its subsidiaries and unnamed co-conspirators are emphasized by plaintiff in order to support class action treatment. The Court feels that plaintiff has not sustained his burden even as to these issues. Two recent decisions are helpful in reaching this conclusion.

Plaintiffs, in Abercrombie v. Lums, Inc., 345 F.Supp. 387 (S.D.Fla.1972), claimed that defendants imposed illegal tie-ins on all Lums restaurant franchisees. The Court denied class action status on the grounds, *inter alia*, that common questions did not predominate over questions of individual proof.[9] The

6. Fed.R.Civ.P. 23(a)(2) and 23(b)(3).

7. Fed.R.Civ.P. 23. It has been noted that neither the existence of a common legal issue nor the fact that the decision in one case might serve as legal precedent in another are persuasive reasons for recognition of a class action since the effect of these arguments would be to extend the rule so that almost every action would be susceptible to being brought as a class action. William Goldman Theatres, Inc. v. Paramount Film Distributing Corporation et al., 49 F.R.D. 35, 41 (E.D.Pa. 1969).

8. See also, Abercrombie v. Lums, Inc., 345 F.Supp. 387 (S.D.Fla.1972); Caceres v. International Air Transportation Assoc., 46 F.R.D. 89, appeal dismissed, 422 F.2d 141 (2nd Cir. 1969).

9. Fed.R.Civ.P. 23(a) and 23(b)(4). The Court recognized, as urged here by plaintiff, that an alleged claims ultimate merits are not relevant to class action determination. However, "analysis of the issue and the nature of proof which will be required at trial is directly relevant . . . ." to the class issue, concluded the Court. *Lums*, at p. 390, citing Denver v. Amer-

existence of the alleged tie-ins, reasoned the Court, could not be determined by uncovering alleged conspiracies or by examining written franchise agreements, but only by a review of each individual franchisee's relationship with defendants. Moreover, the predominance of such "separate, distinct and individual" issues indicated that a class action would not be superior to other methods of adjudicating the controversy.[10]

"The individuality of the proof required would cause this suit to degenerate at trial into multiple lawsuits separately tried, exploring the relationships between each of over 400 members and the defendants on numerous alleged ties." *Lums* at page 393.

In deciding the issue of allegations of a nationwide "conspiracy" in In re 7-Eleven Franchise Antitrust Litigation, M.D.L. Docket No. 97 (N.D.Calif.1972), the Court stated at pages 2 and 3:

"The moving parties stress at great length the allegations of a nation-wide 'conspiracy' to coerce all franchisees to follow the practices established by Southland and argue that such coercion is tantamount to the coercive effect of a contractual provision such as was involved in *Chicken Delight.* This argument, however, is not persuasive. While a contractual provision is necessarily coercive, since it is backed by the force of law, an attempt to coerce may or may not be effective, depending upon the relative positions of the parties. Such an attempt may be effective in the competitive conditions of a crowded city and devoid of any effect in the middle of the Arizona desert. Obviously then, the issue of coercion must be decided on a case-by-case basis and does not justify

class treatment. Southland filed numerous affidavits of its franchisees stating that they ran their stores as they saw fit, regardless of the attempted directions of Southland."

■ The instant action fails as a class action because of the existence of separate questions of fact as to each potential plaintiff. The relationship as between plaintiff and Chrysler was essentially a personal one, that is, in the main a face-to-face encounter. That there may have been over-reaching on the part of Chrysler, plaintiff will have ample opportunity to litigate. Likewise, Chrysler will have ample opportunity to prove its counterclaim. Thus, here, even if there are some common questions of law and fact under 23(a)(2), these common questions clearly do not predominate over individual questions of law and fact. [Rule 23(b)(3)]. Accordingly, the "predominance" requirement of Rule 23(b)(3) is not satisfied.

In conclusion, there is no common nucleus of facts, an essential common factual link as between the class members and the defendant, which would make class action treatment appropriate. However, my Order dismissing this plaintiff's class action claims will not serve to sound a "death knell" for this instant complaint as the plaintiff alleges numerous losses as a result of alleged violations of law by defendants. It is thus likely that the plaintiff will pursue the individual action because of his own substantial claims.

*Findings and Order*

Based upon all the foregoing, and the documents of record, this Court finds:

(1) That questions of law and fact common to the members of the proposed class or classes do not predomi-

ican Oil Co., 53 F.R.D. 620 (D.Colo. 1971).

10. Fed.R.Civ.P. 23(b)(3). The case of Seligson v. The Plum Tree, Inc., 350 F. Supp. 440 (E.D.Pa.1972) does not conflict with the *Lums* case. Since discovery

in *The Plum Tree* had only recently begun, Judge Lord felt that he could not then determine whether individual or common issues would predominate. A marked contrast to the instant case where the court has the benefit of ample pre-trial discovery based on class action issues.

nate over the questions affecting only individual members thereof. [Rule 23(a)(2), 23(b)(3)].

It is therefore ordered, this 16th day of November, 1972, that plaintiff's motion to maintain this action as a class action is denied.

It is further ordered that plaintiff's motion to amend his complaint to increase the size of the proposed class is denied.