Chris K. YANAI et al., Plaintiffs,

v.

FRITO LAY, INC., Defendant.

No. C 71–1271.

United States District Court,
N. D. Ohio, E. D.

March 5, 1973.

———◆———

Michael T. Honohan and June W. Wiener, Benesch, Friedlander, Mendelson & Coplan, Cleveland, Ohio, for plaintiffs.

Thomas P. Mulligan, Jones, Day, Cockley & Reavis, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

Plaintiffs, who are 73 independent distributors or former independent distributors of defendant's products, are suing under the antitrust laws, specifically Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. All plaintiffs seek damages and six plaintiffs also seek injunctive relief. The case is presently before the Court on plaintiffs' motion to certify a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

The class certification sought by plaintiffs would include 257 distributors, described as follows:

"All independent distributors and former independent distributors of Frito-Lay products in the Buffalo, New York area, and in the area comprising Frito-Lay's 'Great Lakes Zone', i. e., the States of Indiana, Ohio, and portions of the States of Illinois, Kentucky, Michigan, Pennsylvania and West Virginia, who were independent distributors at any time during the period January 1, 1967 to the time this suit was commenced."

As a technical matter, the prerequisites of a class action listed in Rule 23(a) are present in this case. Therefore, the crucial issues presented by this motion are first, whether the questions of law and fact common to the members of the proposed class predominate over questions affecting only individual members and, second, whether a class action would be superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3), Federal Rules of Civil Procedure. Before reaching these questions, however, it is necessary to examine the issues of law and fact, as they are developed at this stage in the proceedings.

## I. BASIS OF SUIT

Plaintiffs claim in Count I of their complaint that defendant is attempting to monopolize the snack food industry in the Great Lakes Area in violation of Section 2 of the Sherman Act through the termination of independent distributors of snack food products. In particular, plaintiffs allege that defendant, which is the largest supplier of corn chips in the relevant market, terminated or threatened to terminate without cause its supply of corn chips to each distributor, thereby coercing plaintiffs into accepting employment with defendant at a loss in profits. They further allege that

defendant prevented plaintiffs' sales of competing potato chips and pretzels.

In Counts II through IV, plaintiffs assert violations of Section 1 of the Sherman Act. Specifically, plaintiffs claim that the termination provisions of the distribution agreements and defendant's enforcement of the termination provisions had an anticompetitive objective and resulted in an unreasonable restraint of trade. Furthermore, they claim that the defendant conspired with distributors to induce, persuade and coerce plaintiffs from competing and from selling at prices other than those fixed by defendant. Finally, they assert that defendant and the distributors by agreement and concert of action appropriated or attempted to appropriate the assets and good will of plaintiffs.

## II. PREDOMINANCE OF COMMON OR SEPARATE ISSUES

The courts have identified certain considerations as significant to the determination as to whether common or separate issues predominate for purposes of certifying a class action in a civil antitrust suit. For example, several courts have found that common issues predominate when the claimed violation of the antitrust laws is price fixing and the proposed class includes those who purchased the products at a fixed price. Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa.1968); Iowa v. Union Asphalt and Roadoils, Inc., 281 F.Supp. 391 (S.D. Iowa 1968); Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn. 1968); Philadelphia v. American Oil Co., 53 F.R.D. 45 (D.N.J.1971). In addition, several courts have certified classes where the plaintiffs claimed an attempt to monopolize and the basic liability could be established by identical acts toward every member of the class. In those cases, the claims involved form franchise agreements with provisions in violation of the antitrust laws, price discrimination in which the price for the class was the same and in which the price for a different group was lower, merger, exclusive dealing and tie-in sales. Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 796 (10th Cir. 1971); Seligson v. Plum Tree, Inc., 55 F.R.D. 259, 260 (E.D.Pa.1972); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 725, 726 (N.D.Cal.1967); Philadelphia Electric Co. v. Anaconda Brass Co., 43 F.R.D. 452, 457 (E.D.Pa.1968).

On the other hand, courts which have denied motions to certify class actions in civil antitrust suits have specifically noted certain issues which would involve individualized proof. In particular, the requirement that coercion or conspiracy be proved often militates against class certification. In re 7-Eleven Antitrust Litigation, CCH Trade Reports ¶ 74,-156 at 92,839, 92,830 (N.D.Cal.1972); Abercrombie v. Lum's Inc., 345 F.Supp. 387 (S.D.Fla.1972); Lah v. Shell Oil Co., 50 F.R.D. 198, 200 (S.D.Ohio 1970). In addition, where contract provisions are claimed to be violative of the antitrust laws, a diversity of contracts among class members is a factor against class certification. Gaines v. Budget Rent-A-Car Corp., CCH Trade Reg. Reports ¶ 73,860 at 91,602 (N.D.Ill.1972); Abercrombie v. Lum's Inc., 345 F.Supp. 387 (S.D.Fla.1972). Counterclaims involving separate issues have also been considered a factor which make a class action less practicable. DiCostanzo v. Chrysler Corp., 57 F.R.D. 495 (E.D.Pa. 1972). An indication that some class members have not been damaged or that damages will not be measured simply by the application of a formula is also weighed against a class certification. Siegel v. Chicken Delight, Inc., 448 F.2d 43, 52, 53 (9th Cir. 1971); William Simon, "Class Actions—Useful Tool or Engine of Destruction," 55 F.R.D. 375, 383–386 (1972); United Air Lines, Inc. v. Wiener, 286 F.2d 302 (9th Cir. 1961) (noting right to jury trial as to question of damages).

■ This case involves questions which are common to the members of

the proposed class as well as separate questions. However, upon application of the rationales articulated by other courts, it is evident that separate rather than common questions predominate. The common questions of law and fact are limited primarily to the relevant market, defendant's dominance, its plan to integrate and its anticompetitive motives. In contrast to these few common questions, the list of separate questions posed by the claims is quite extensive.

█ Substantial separate questions are posed in regard to damages. Defendant is entitled to a determination of the "fact of damage" as to each of the 257 class members as a prerequisite to recovery. 15 U.S.C. § 15; Hawaii v. Standard Oil Co. of California, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). In this case, there is a substantial question as to the "fact of damage." Defendant claims that several of the class members were terminated for cause, may have abandoned their routes, died or retired and were not therefore damaged by its alleged course of conduct. There is also an issue whether those members not yet terminated have been damaged.

In addition to the proof of the "fact of damage," the plaintiffs will also be required to prove the extent of damage. If there is no formula for recovery, the defendant is entitled to a jury verdict as to the measurement of the damages suffered by 257 separate parties. Damages claimed include loss of profits which would have been derived from independent businesses in a competitive market. Such a determination includes the assessment of the future earning power of a distributor when compared with the compensation paid him by defendant. The only formula suggested plaintiffs involves the use of the profits for the year preceding the takeover or threat-

ened takeover by defendant. However, such a formula based on only one year's past performance is clearly not a measure of the future profits. Thus, it appears at this stage in the proceedings that each claim for damages will require separate litigation.

In examining the proof required for each plaintiffs' claims of liability, additional separate questions arise. In Count I plaintiffs assert, as a basis for the claim of monopolization, that defendant terminated or threatened to terminate their independent distributorships without cause. Defendant, however, claims that it did not terminate 64 members, that these 64 members left for 9 different reasons, that it terminated 18 members for cause, and that it has no knowledge why 6 members terminated their distributorships. It therefore appears that the reason for termination will be a separate question for each. In Count II, plaintiffs claim that provisions of the franchise agreements violate the antitrust laws. However, 173 members of the class apparently had no written agreement and the remaining 84 members had one of four or five types of written agreements.[1] In Counts III and IV plaintiffs claim coercion on the part of defendant in the restraint of competition in price fixing and forbidding the sale of competing products. The evidence as presented at this stage indicates the prices charged by members of the proposed class were not uniform so that the price fixing claim would be separately litigated as to various class members and further that some members of the class sold competitive products so that the proof of agreements not to compete would involve separate evidence for each. In addition, the fact of coercion is likely to involve some individual proof as to the relationships between defendant and various class members.

---

1. Plaintiffs indicated at the oral hearing on this motion that they may not wish to pursue this claim as most of those with written agreements have been terminated. However, until plaintiffs formally withdraw this claim, the Court must consider it as a factor.

In addition to the complex separate liability and damage questions, there are compulsory counterclaims asserted by defendant against several members of the proposed class for different accounts due. While not determinative, these counterclaims are further complicating factors, which, considered with other questions above, leads the Court to the conclusion that separate questions predominate.

## III. FAIR AND EFFICIENT ADJUDICATIONS

■ Under Rule 23(b)(3) the Court is under a duty to consider, in addition to the predominance of separate and common issues, whether the dispute would be more fairly and efficiently adjudicated as a class action. In making that determination, it is significant that several policy considerations which would normally be weighed in favor of maintaining a class action are not in issue here.

For example, the situation is not one in which the class action is the only viable procedure to obtain redress for a wrong which is manifested by only a small amount of damage to a large number of persons. In re Ampicillin Antitrust Litigation, 55 F.R.D. 269, 276 (D. D.C.1972); Dolgow v. Anderson, 43 F. R.D. 472, 485 (E.D.N.Y.1968). Counsel for the 73 named plaintiffs indicated at the hearing for this motion that they can and will continue asserting their claims even without class certification. Furthermore, the treble damages and attorneys fees allowed under the antitrust laws make practicable the assertion claims by single distributors for the violations at issue. 3B J. Moore, Federal Practice ¶ 23.45 [2] at 23–766.

There is no indication that there is presently a risk of conflicting decisions in other forums or that related suits have been filed elsewhere. Rule 23(b)(3)(B), Federal Rules of Civil Procedure. Even if such suits are filed, the parties may utilize the provisions of the Multidistrict Litigation Statute, 28 U.S.C. § 1407, and the liberal federal provisions for permissive intervention in Rule 24(b) of the Federal Rules of Civil Procedure.

## V. CONCLUSION

In amending Rule 23 in 1966, the Advisory Committee recognized that the certification of class actions in suits primarily for damages should be denied even if the technical requirements of Rule 23(a) were met, if the separate questions predominated and if the suit could fairly and efficiently be litigated without such certification. See J. Moore, Federal Practice ¶ 23.01 [10.–3] at 23–29, 23–30. This Court, although convinced that the liberal class action provisions of Rule 23 are beneficial and necessary to the fair and efficient adjudication of many controversies, is also aware of the danger posed by the misapplication of the expensive and complex class action procedures. See 55 F.R.D. 375, 377 (1972).

■ In antitrust suits such as this, in which the individual claims are substantial, the treble damage provisions apply, and attorneys fees are available, the class action certification is not necessary to the success of the suit. Thus, since the Court has found that individual rather than common questions predominate, it denies plaintiffs' motion to certify the class without prejudice.

The Court grants plaintiffs' motion to file a second amended complaint.

It is so ordered.