**J. M. WOODHULL, INC.,**
**Plaintiff,**

v.

**ADDRESSOGRAPH–MULTIGRAPH**
**CORP., Defendant.**

**C3 4495.**

United States District Court,
S. D. Ohio, W. D.

Jan. 24, 1974.

Jon M. Sebaly, Smith & Schnacke, Dayton, Ohio, for plaintiff.

Murray S. Monroe, Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, District Judge.

The plaintiff, J. M. Woodhull, Inc., brings this matter before the Court upon its motion for class determination pursuant to Rule 23(c) Fed.R.Civ.P. More specifically, the plaintiff seeks an order from the Court that this action be maintained and that the plaintiff be representative of "All persons in the United States which have done or are at present doing business as distributors of microfiche camera and processing equipment sold to them by Micrographic Technology Corporation ["MTC"] prior to some-

time in April, 1973, and after that time by a division of defendant, Addressograph-Multigraph Corporation ["AMC"], who have been terminated or advised that they will be terminated as distributors . . . " The parties have conducted discovery and submitted memoranda with supporting exhibits consistent with the Court's order of October 4, 1973.

This action arises under Section 4 of the Clayton Act, 15 U.S.C. § 15 (1970). Plaintiff seeks injunctive relief and damages for alleged violations of Sections 1 and 2 of the Sherman Act, 15 U. S.C. §§ 1 and 2 (1970) and § 7 of the Clayton Act, 15 U.S.C. § 18 (1970). This Court has jurisdiction under 28 U. S.C. § 1337 (1970).

Prior to April 13, 1973, the plaintiff and the members of the class it seeks to represent were distributors of high-speed microfiche camera equipment and processing systems for Micrographic Technology Corporation ["MTC"]. On April 13, 1973, the defendant, Addressograph-Multigraph Corporation Bruning Division ["Bruning"], acquired substantially all of the assets of MTC, including the rights of the distributor contracts under which the plaintiff and other distributors operated. On May 3, 1973, Bruning gave notice to the twenty-seven distributors that their MTC distributorship contracts would be terminated effective August 6, 1973. On July 27, 1973, each of the terminated dealers was given an invitation to become a sales representative of Bruning. Ten of the distributors have accepted some form of the July 27, 1973, sales arrangement; the others, including the plaintiff, have not done so.

On July 30, 1973, the plaintiff filed this action alleging that defendant and others unknown to it had conspired and entered into agreements with the primary purpose and intent of restraining, monopolizing, attempting to monopolize and substantially lessening competition

in the trade and commerce of microfiche products. The plaintiff by this motion seeks to have the action maintained as a class action on behalf of the twenty-seven distributors who were terminated by the letter of May 3, 1973.

For a class action to be the proper vehicle for adjudicating a controversy, the following requirements of Rule 23(a) must all be satisfied:

1. The class must be so numerous that joinder of all members would be impracticable;

2. There must be questions of law or fact common to the class;

3. The claims or defenses of the representative parties must be typical of the claims or defenses of the class; and

4. The representative parties must fairly and adequately protect the interests of the class.

In addition, Rule 23(b)(3) requires:

The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

59 F.R.D. 606, 607.

This Court is of the opinion that the purported class of plaintiffs does not meet the prerequisites of Rule 23.

## THE PURPORTED PLAINTIFF CLASS FAILS TO MEET THE REQUIREMENTS OF RULE 23 (b)(3).

■ In deciding whether common issues of fact and law predominate over individual issues of fact and law, it is well settled that questions of liability can be separated from individual questions of damages. State of Illinois v. Harper & Row Publishers, 301 F.Supp. 484 (N.D.Ill.1969); City of Philadelphia v. American Oil Company, 53 F.R.D. 45 (D.N.J.1971). The Court finds that the alleged conspiracy and subsequent terminations present common issues of fact and law.

Individual questions concerning the members relate primarily to damages and to some extent liability itself. Under Section 7 of the Clayton Act, liability turns upon whether the plaintiff has been injured by a decrease in competition within a defined geographic area. Gottesman v. General Motors Corporation, 436 F.2d 1205, 1210 (2d Cir. 1970), cert. den. 403 U.S. 911, 91 S.Ct. 2208, 29 L.Ed.2d 689 (1971); Dole Value Co. v. Perfection Bar Equipment, Inc., 311 F. Supp. 459, 462 (N.D.Ill.1970). The defendant has filed a counterclaim against the plaintiff in the instant action and has alleged that others will follow should the plaintiff prevail on his motion. Each counterclaim would become an individual issue of fact and law, presented to the Court as a separate trial for each plaintiff in the proposed class. Although the Court does not hold that these individual issues predominate, they are factors considered by the Court in the determination that a class action is not superior to other methods of adjudication. See: Lah v. Shell Oil Co., 50 F. R.D. 198, 200 (S.D.Ohio 1970), Hogan J.; Cotchett v. Avis Rent A Car System, Inc., 56 F.R.D. 549 (S.D.N.Y.1972).

■ Cases have emphasized that it is necessary under Rule 23(b)(3) that the class action "[must be] superior to—not just as good as—other available methods

for handling the controversy."[1] The question of whether a class action is superior is an area in which the courts can and have used considerable discretion of a pragmatic nature.[2] The Advisory Committee in notes accompanying the Amended Rule states: "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bring about undesirable results." 39 F.R.D. 69, 102–103. The burden is on the plaintiff to show the superiority of the class action. Sims v. Parke Davis & Co., D.C., 334 F.Supp. 774, 780, aff'd per curiam 453 F.2d 1259 (6th Cir. 1971), cert. den. 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972); Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968); Brooks v. Briley, 274 F.Supp. 538, 547 (M.D.Tenn.1967), aff'd per curiam 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968).

One of the purposes of a class action in an antitrust suit is to enable plaintiffs with small claims to have their day in court. Indeed, Rule 23(b)(3) demands finding the superiority of class action in part because "the interest of members of the class in individually controlling the prosecution . . . of separate actions." In the instant case, the sales of Microfiche Products are limited in their numbers, yet are sold for relatively high per unit prices. Selling prices for the two pieces of equipment involved were approximately $2,000 and $10,000 respectively. When, as here, there are relatively few claimants with substantial individual claims, the interest of each plaintiff in

the control of the litigation increases substantially. Bill Minielli Cement Contracting, Inc. v. Richter Concrete Corp., No. 8547 (S.D.Ohio 1973, Porter, J.); Caceres v. International Air Transport Asso., 46 F.R.D. 89, 95 (S.D.N.Y.1969), appeal dismissed 422 F.2d 141 (2d Cir. 1970); Abercrombie v. Lums, Inc., 345 F.Supp. 387, 394 (S.D.Fla.1971). Likewise, there is no danger that dismissal of a class action will result in a "death knell" to the plaintiff's case as his own substantial claims (and the defendant's counterclaim) render it likely the action will be pursued. See DiCostanzo v. Chrysler Corp., 57 F.R.D. 495, 499 (E.D.Pa.1972).

The Court notes that if the plaintiff, Woodhull, prevailed in this action on the issue of a conspiracy and attempt to monopolize, it would seem that even without a class action this would inure to the benefit of the other distributors of Microfiche products under the doctrine of collateral estoppel. See Rachal v. Hill, 435 F.2d 59 (5th Cir. 1970); Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177 (3rd Cir. 1972); Bernhard v. Bank America National Trust & Savings Assn., 19 Cal.2d 807, 122 P.2d 892 (1942); Bill Minielli Cement Contracting, Inc. v. Richter Concrete Corp., *supra*. The plaintiff argues in support of his proposition that the requirement of impracticability of joinder is satisfied by the fact that the twenty-seven distributors are found in twenty-five states, thus making it extemely difficult to bring them before this Court. However, in the event the plaintiff prevails upon the issue of conspiracy, such joinder is unnecessary because the defendant would be bound through collateral estoppel. Moreover, one of the mat-

1. Buford v. American Finance Co., 333 F. Supp. 1243, 1250 (N.D.Ga.1971); Ratner v. Chemical Bank New York Trust Co., D.C., 54 F.R.D. 412, 416; Shields v. First National Bank, 56 F.R.D. 442 (D.Ariz.1972); Berkman v. Sinclair Oil Corp., 59 F.R.D. 602 (N.D.Ill.1973).

2. Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir., Feb. 20, 1973); Ratner v. Chemical Bank New York Trust Co., *supra*; Buford v. American Finance Co., *supra*; Shields v. First National Bank, *supra*; Minielli Cement Contracting, Inc. v. Richter Concrete Corp., No. 8547 (S.D.Ohio 1973), Porter, J.

ters pertinent to a finding of the superiority of the class action is the desirability of concentrating the litigation of claims in this forum. The Court is of the opinion that no purpose of efficiency or fairness would be served by requiring the members of the purported class to litigate questions of damages in this Court when the alternative is separate actions in the State of their business operations.

The Court is not unaware that in refusing to certify this case as a class action that the specter of inconsistent verdicts may arise as to the defendant. However, the Court notes that it is the defendant which opposes the class and which has, presumably, weighed the risks involved. Moreover, the Court notes that the efficiencies which result from this ruling clearly show the superiority of the non-certification of the class.

All communication toward reaching agreements amicably without litigation has ceased during the pendency of this determination. Discussions concerning settlement may now proceed unhampered by the necessity of court supervision and approval, as required by Rule 23(e). As there exists the possibility of substantial claims and counterclaims between the various parties, negotiations have promise of being in earnest, for the likelihood of abandonment is small.

■ The defendant has argued that the Court should deny the determination of the class upon the basis of abuse of the class action process. It is not denied, and the Court finds that the plaintiff actively solicited the members of the purported class both prior to and after the filing of this case. The Court also finds that this solicitation was carried out with the intent and express purpose of sharing the expenses of litigation among members of the class. The Court is aware of cases which hold that solicitation of the class action is in itself sufficient to prevent certification of the class. Halverson v. Convenient Food Mart, Inc., 458 F.2d 927 (7th Cir. 1972); Graybeal v. American Savings & Loan Ass'n., 59 F.R.D. 7 (D.D.C.1973); Cotchett v. Avis Rent A Car System, supra; Carlisle v. LTV Electrosystems, Inc., 54 F.R.D. 237 (N.D.Tex.); Bill Minielli Cement Contracting, Inc., v. Richter Concrete Corp., supra. These cases, however, as does the Manual for Complex Litigation at Section 1.41, are aimed at the prevention of misleading misinformation and unethical solicitation of class representatives by attorneys. It is not even alleged that this has occurred. Likewise, the Court notes that there is, at present, no local rule on the subject as recommended by the Manual for Complex Litigation in Section 1.-41. For these reasons the Court does not hold that such abuse has occurred as to defeat this class action. This is a determination which depends upon the facts and circumstances of each case, not the blind application of a rule of law.

■ The Court does not feel, however, that the splitting of attorney expenses in the event the case is lost is not to be considered one of the primary reasons for the bringing of a class action. In view of the plaintiff's expressed statement that this is indeed a primary purpose of the proposed class, the Court is of the opinion that the denial of a class determination would be proper upon that ground. The class action allowed under Rule 23 has as its roots practical considerations of efficiency in the courts and fairness to the participants. Neither would be advanced by sanctioning the view expressed by the plaintiff in his letters of August 2 and September 27.

The failure of the plaintiff class to meet the necessary requirements of Rule 23(b)(3) is fatal to the maintenance of a class action in the instant case. Thus, it is not necessary for this Court to decide whether the plaintiff meets all the requirements of Rule 23(a). This Court in passing will merely state those factors which cast serious doubt on wheth-

 

er the plaintiff could have met these requirements.

The size of the proposed class is merely twenty-seven distributors. While the plaintiff argues forcefully that size of the proposed class alone is not determinative, it is a primary factor for the Court to consider. In view of the fact that at least ten members of the proposed class have accepted contracts as sales representatives, the possibility of withdrawal rather than jeopardy of an ongoing business relationship might reduce the number by more than one-third. The Court is not blind to the realities of the decisions that proposed members would have to make upon the determination of the class action. As a practical matter, a certification of this class action might well have led to a redetermination later based solely upon withdrawals from the class as permitted by Rule 23(c)(2). (See: Rule 23(c)(1).)

It is doubtful whether the plaintiff can fairly and adequately represent the interests of the members of the alleged class. The plaintiffs argue that the Court should look at the class solely as terminated distributorships and ignore all events which have affected their status since that time. This contention ignores the fact that the present sales representatives may either be satisfied with their present positions or fearful of the results of the action now being brought by the plaintiff. Their business relationships might be seriously jeopardized were they to remain members of the class. To some extent this may be reflected in the fact that of the seven members of the purported class that have agreed to share attorneys' expenses, not one is a present sales representative of the defendant. The Court, being of the opinion that the plaintiff has not fulfilled his burden of proving the superiority of the proposed class action, as required by Rule 23(b)(3), need not decide these matters.

Accordingly, the plaintiff's motion for the determination of this as a class action pursuant to Rule 23(b)(1) is hereby denied. The defendant will supply the Court with a copy of the notice required by Rule 23(b)(2) within ten (10) days of the filing of this Opinion.

It is so ordered.