**BOSTON PNEUMATICS, INC.**

**v.**

**INGERSOLL–RAND.**

**Civ. A. No. 72–1729.**

United States District Court,
E. D. Pennsylvania.

Dec. 2, 1974.

Mark Braverman, Philadelphia, Pa., for plaintiff.

Henry T. Reath, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Boston Pneumatics, Inc. (B-P), plaintiff in this treble damage antitrust action, has moved, pursuant to F.R.Civ.P. 23(c)(1), for a determination whether this suit may be maintained as a class action. B-P is engaged in the manufacture[1] and sale of pneumatic tools. Defendant Ingersoll-Rand Company (I-R) is engaged in the manufacture and sale of pneumatic tools and compressors in both domestic and international markets. Suit was instituted under Sections 1 and 2 of the Sherman Act, as amended, 15 U.S.C. §§ 1 and 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18.

In its amended complaint, plaintiff has alleged that I-R and other co-conspirators (named, but not joined as defendants) have, with respect to the manufacture and sale of pneumatic tools and compressors, committed a number of acts in violation of the antitrust laws including, inter alia, engaging in industrial surveillance; interfering with standards of acceptance for sale and use of such products; making malicious and untrue charges of illegal operations, specifically, violations of the Buy American Act;[2] dividing markets; curtailing or preventing technological advances; creating and fostering corporate interrelationships artificially to maintain prices and restrict competition; conducting a policy of mergers and acquisitions to create a monopoly; and participating in meetings to fix prices, restrain trade and limit competition.

· In the class action allegations of the amended complaint, plaintiff sought to represent a class consisting of (a) approximately 117,300 state and municipal governments, (b) 35 federal government agencies, and (c) approximately 95,000 building contractors, all purchasers of pneumatic tools and compressors, and (d) some 320 manufacturers of pneumatic tools and compressors. At oral argument on the motion for class action approval, because of the unmanageability of the numbers, and because of the patently diverse and conflicting interests of the alleged buyer-class members as opposed to alleged manufacturer-class members, I advised plaintiff's counsel to confine his argument to seeking approval for a class consisting of manufacturers only. This discussion of the motion for approval of a class action will be so limited.

Rule 23(a) governing class actions provides, in part:

### Rule 23

### Class Actions

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class

---

1. B–P's status as a manufacturer is disputed by defendant. For the purposes of this motion, I am assuming that B–P is a manufacturer.

2. 41 U.S.C. §§ 10a through 10d.

action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

A plaintiff seeking to maintain a class action has the burden to establish the right so to proceed. Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); B. & B. Investment Club v. Kleinert's, Inc., 62 F.R.D. 140, 145 (E.D. Pa.1974); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 457 (E.D.Pa.1968). It is plaintiff's burden to establish that it meets all of the requirements of Rule 23(a) and in addition, at least one of the requirements of 23(b). Plaintiff in the instant case has made no serious effort to qualify under (b)(1) or (b)(2) and has concentrated its efforts on satisfying the requirements of 23(b)(3).

Although there are substantial questions as to whether plaintiff can meet each of the prerequisites set forth in Rule 23(a), particularly those set forth in subdivisions (2) and (3), it will not be necessary to reach this issue, for it is evident that the requirements of 23(b)(3) cannot be satisfied. Plaintiff has failed to establish that common issues of law and fact predominate over individual issues, or that class action is superior to other methods for adjudication of the controversy between the parties.

The amended complaint contains a number of broad general charges of conduct violative of the antitrust laws. The parties have since, however, pursuant to court order, engaged in extensive discovery relating to the class action motion. From the record thus created, it is apparent that plaintiff's real complaint is that I-R has improperly interfered with plaintiff's opportunity to obtain federal government business by (1) falsely charging that B-P violated the Buy American Act; (2) conspiring with government employees to impose testing standards on products sold by B-P, which standards were not required by regulations, and (3) falsely charging that B-P was not a manufacturer of its products, but was instead passing off used products manufactured by I-R as its own. All of these charges, which are at the heart of plaintiff's complaint, are matters unique to B-P and I-R. There is nothing in the present record to indicate that I-R has engaged

in similar conduct with respect to any other members of the alleged class. The proofs relating to these charges will involve B-P's role as a manufacturer and I-R's justification, or lack of justification, in making charges against B-P, if such charges were made. The proofs at trial will also deal with the nature and the volume and the types of contracts procured by B-P and how B-P filled those contracts, whether with goods of its own manufacture or with products manufactured by others including, possibly, products manufactured abroad and imported in violation of the Buy American Act. The individual issues outweigh by a wide margin any possible issues common to the members of the alleged class of manufacturers. See Yanai v. Frito Lay, Inc., 61 F.R.D. 349 (N.D.Ohio 1973); DiCostanzo v. Chrysler Corp., 57 F.R.D. 495 (E.D.Pa.1972); Abercrombie v. Lum's, Inc., 345 F.Supp. 387 (S.D.Fla.1972); Caceres v. International Air Transport Association, 46 F.R.D. 89 (S.D.N.Y.1969).

As noted in Yanai v. Frito Lay, Inc., supra, 61 F.R.D. at 351, common questions have been found to predominate in antitrust cases where, for example, the claimed violation of antitrust law is price fixing, and the proposed class consists of those who purchased products at the fixed prices, see Philadelphia Electric Co. v. Anaconda American Brass Co., supra; State of West Virginia v. Charles Pfizer & Co., Inc., 440 F.2d 1079 (2d Cir. 1971); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); and in other cases where attempts to monopolize involved identical acts toward all members of the class, see Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal.1967), modified, 412 F.2d 830 (9th Cir. 1969); Philadelphia Electric Co. v. Anaconda American Brass Co., supra; In re Ampicillin Antitrust Litigation, 55 F.R.D. 269 (D.C.D.C.1972); Sunrise Toyota, Ltd. v. Toyota Motor Co., Ltd., 55 F.R.D. 519 (S.D.N.Y.1972).

■ ■ In the instant case B-P has asserted claims of a broad-based con-

spiracy to restrain competition and agreements to fix prices. Such charges can present common issues for class action purposes (see discussion above) but this case has been pending for two years, and despite the extensive discovery on the class action question, plaintiff has failed to make any showing of other than individual issues. A bare allegation of conspiracy is not sufficient to establish the existence of a predominating common question. Such conspiratorial conduct as has been intimated thus far in this record (that between I-R and government employees) relates solely to the individual issues of fact and law.

■ The charge of price fixing does present a common question, but one which appears to affect only members of the alleged buyer-class, and I have already determined that the alleged buyer-class members may not appropriately be represented by B-P in this action. Absent the buyer-class, it is difficult to see how price fixing may have adversely affected other manufacturers. If I-R and its alleged co-conspirators have been guilty of price fixing in the areas in which the alleged class member manufacturers were competitors, the likelihood is that such fixed prices (presumably fixed at a level higher than would have been dictated by competitive conditions) redounded to the benefit, not the detriment, of the alleged class member manufacturers. The price fixing allegation cannot, therefore, serve as a predominating common issue for the proposed class of manufacturers.

■ B-P has also failed to demonstrate that class action is superior to other methods of handling the controversy. One of the major purposes of class actions, as stated by Judge Medina in Eisen v. Carlisle & Jacquelin, supra, 391 F.2d at p. 560, is to provide "small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." This is not such a case. B-P is a manufacturer whose annual

sales ranged upward of two million dollars. It is seeking treble damages for the substantial losses allegedly caused by defendant's conduct. The provisions in the antitrust laws for the award of treble damages are themselves significant inducement to private litigants to bring suits against violators. B-P is not seeking redress for a multitude of small claims which would otherwise go unprosecuted. Denial of class action will not sound the "death knell" for B-P's claim, or, indeed, for the claims of the other manufacturers, if any, who have been harmd by defendant's alleged antitrust violations. DiCostanzo v. Chrysler Corp., 57 F.R.D. 495, 499 (E.D.Pa.1972); J. M. Woodhull, Inc. v. Addressograph-Multigraph Corp., 62 F.R.D. 58, 61 (S.D. Ohio 1974).

The motion for approval of class action will be denied.