**SAN ANTONIO TELEPHONE COMPANY, INC., et al.**

v.

**AMERICAN TELEPHONE & TELE-GRAPH COMPANY et al.**

**No. SA–72–CA–330.**

United States District Court,
W. D. Texas,
San Antonio Division.

June 23, 1975.

Joel W. Westbrook, San Antonio, Tex., Philip E. McCleery and J. Robert Shee-

hy, Waco, Tex., Surrey, Karasik & Morse, Washington, D. C., for plaintiffs.

Hugh L. Steger and John K. DeLay, Jr., Dallas, Tex., Hubert W. Green, San Antonio, Tex., Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants.

## ORDER DENYING CERTIFICATION OF CLASS ACTION

JOHN H. WOOD, Jr., District Judge.

On this 23rd day of June, 1975, came on to be considered the Motion to Maintain Class Action filed by the plaintiffs in the above styled and numbered cause. The Court, having considered the motion and amendments thereto and Briefs in support thereof together with defendants' responsive pleadings in opposition thereto and the file and record of the case, is of the opinion and so finds that the motion and application for certification of Class Action filed by the plaintiffs herein should be denied.

Plaintiffs urge that the Court certify the class action as there would be no harm in doing so for the reason that any potential members of the proposed class who want to opt out would be allowed to do so. This is somewhat circular reasoning. The plaintiffs seem to indicate that if the Court certifies the instant action as a class action great numbers of the potential class will rush to join the pending suit. Such assertions are irrelevant. The Court should not breathe life into the Frankenstein monster of Rule 23, Federal Rules of Civil Procedure, unless the plaintiff first carries his burden and justifies the application of the Rule.

"Rule 23 requires a litigant who would bring a class action to overcome two hurdles. First, he must satisfy all the conditions of Rule 23(a) and then he must also convince the court that his action is appropriate under one of the three subdivisions of Rule 23(b)." *Green v. Wolf Corporation*, 406 F.2d 291, 298 (2nd Cir., 1968), cert. den'd. 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed 2d 766.

Indeed, the spectre of members of the proposed class rushing to join the lawsuit once class certification is made is quite an imponderable, especially in light of the fact that to date one named plaintiff originally in the lawsuit, Gulf Telephone & Electronics, Inc., has already opted out and only one other, Interconnect Resources Corporation, has sought to intervene and this was by Motion to Intervene filed May 30, 1975, only three weeks ago. Such motion is opposed by defendants and is dealt with by the Court by separate Order.

The Court observes that while the use of the model provided by the Electrical Equipment Anti-trust cases might properly have been applicable upon motion to the Judicial Panel on Multidistrict Litigation pursuant to the provisions of 28 U.S.C., Section 1407, the device of the class action under Rule 23 is not applicable because, for a variety of reasons discussed herein, it is not a superior method of adjudicating the potential claims of the potential class members. While the alternative of the Multidistrict Litigation method has been considered by the Court and was brought to the Court's attention in the various pleadings herein, there is no indication that such procedure has been initiated by either party herein.

Plaintiffs' various pleadings allege that the proposed class is all those similarly situated "in those areas of the continental United States wherein Defendant 'Operating Companies', as defined below, in addition to providing local common carrier telecommunication services provide telephone station equipment users, utility lines and central office equipment and management . ." See Plaintiffs' First Amended Complaint.

The term "Operating Companies" is defined as "all of the corporate Defendants except the American Telephone and

Telegraph Company and the Western Electric Company." By a prior Order this Court has denied venue as to all but American Telephone and Telegraph Company, Western Electric Company, Southwestern Bell Telephone Company and Mountain Bell Telephone Company. *San Antonio Telephone Company, Inc., et al. v. American Telephone and Telegraph Company et al.*, 499 F.2d 349 (5th Cir., 1974). Thus, the Court now holds that at the outside the geographic limitation of the potential class is those areas of the continental United States wherein defendants, Southwestern Bell and Mountain Bell, provide the services mentioned above.

In other words, in order to be a member of the prospective class it would be necessary for a potential claimant to demonstrate a competitive relationship with the defendants in the geographic areas served by the defendants, Southwestern Bell Telephone Company and Mountain Bell Telephone Company. It could be argued that the geographic limitation should be further limited to include only the Western District of Texas, but to this point the Court does not address itself.

The policy behind the class action as provided by Rule 23 can be summed up as follows:

"In our complex modern economic system where a single harmful act may result in damages to a great many people, there is a particular need for the representative action as a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group. In a situation where we depend on individual initiative, particularly the initiative of lawyers, for the assertion of rights, there must be a practical method for combining these small claims, and the representative action provides that method . . ." *Es-*

*cott v. Barchris Construction Corporation*, 340 F.2d 731, 733 (2nd Cir., 1965)

The holders of one or two similar small claims could hardly afford to take the risk of an individual action. This factor, among others was instrumental in the birth of Rule 23 and its predecessors.

Under Rule 23(b)(3), the Court must consider among other things whether the action would be more fairly and efficiently adjudicated as a class action as opposed to an individual action utilizing joinder where applicable. Several policy considerations which would normally be weighed in favor of maintaining a class action are not present in the instant case. For example, the instant case does not present the situation where the class action is the only viable procedure to obtain redress for a wrong which is manifested by only a small amount of individual damage to a large number of persons. Further, there is no indication that there is presently a risk of conflicting decisions in other forums for the reason that a finding by a Jury in the instant action that there is liability on the part of the defendants to the named plaintiffs necessitates a finding by the Jury that the plaintiffs have been "injured in (their) business or property by reason" of something forbidden in the anti-trust laws. The named plaintiffs in the instant action may in fact have been damaged by a violation of the anti-trust laws by the defendants. This does not necessarily mean, however, that each and every member of the class has been damaged by such violation, if any. Each member of the class may, therefore, bring his own lawsuit and the question of the fact of damage as to that individual member of the class will be an independent decision on the part of the Jury considering his case, and such decision will not apply to any other member of the class.

■ It should be pointed out that in the abstract a monopoly does not ipso facto cause injury or damage. They are, pursuant to the Sherman Antitrust Act, ipso facto against public policy and in that sense they do cause injury to the public generally simply because Congress has declared so. However, whether a monopoly causes damage to an individual in his business such that he may bring an action therefor and recover monetary or equitable relief pursuant to the Clayton Act, Section 4 (15 U.S.C., Section 15) is a factual determination to be made on each individual case. Once again, the fact of damage must be proved as to each individual member of the class. Such proof, in light of a class size of up to 500, makes the class action unmanageable in this respect. Indeed, the successive complaints filed herein all allege damage and injury and then as part of the relief prayed for seek recovery of monetary damages. Thus, it appears that even the plaintiffs recognize that proof of the fact of damage is necessary for the success of their complaint. Such proof would have to be on an individual basis as to each member of the class.

As noted above, assuming there to be a violation of the anti-trust laws, the plaintiff must show that he has been injured in his business or property as a prerequisite to a private suit.

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent without respect to the amount in controversy and shall recover threefold the damages by him sustained and the cost of suit, including the reasonable attorney's fee." 15 U.S.C. Section 15; *Shumate and Company, Inc. v. National Association of Securities Dealers, Inc.*, 509 F.2d 147, 151 (5th Cir., 1975).

■ In other words, the plaintiff must allege and show the fact of damage in order to recover for a violation on the part of the defendant of the Sherman Act.

"Defendant is entitled to a determination of the 'fact of damage' as to each of the . . . class members as a prerequisite to recovery . . . ." *Yanai v. Frito Lay, Inc.*, 61 F.R.D. 349, 352 (N.D.Ohio, 1973). This, of course, is a restatement of a long standing principle with respect to complaints filed pursuant to Section 4 of the Clayton Act. As more fully set out by the Court in *Reibert v. Atlantic Richfield Company*, 10 Cir., 471 F.2d 727, 731, cert. den'd 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399, rehearing denied 412 U.S. 914, 93 S.Ct. 2289, 36 L.Ed.2d 978, rehearing denied 412 U.S. 945, 93 S.Ct. 2771, 37 L.Ed.2d 406 (1973):

"Antitrust violations admittedly create foreseeable ripples and injury to individual stock holders, consumers and employees, but the law has not allowed all of these standing to sue for treble damages . . . . The aggrieved party must satisfy the 'by reason of' and/or 'by' requirements found in Sections 4 and 16 of the Clayton Act, respectively. This prerequisite boils down to complainant proving that the antitrust violations are the proximate cause of his injury. Two elements are necessary to demonstrate proximate cause: (1) there is a causal connection between an antitrust violation and an injury sufficient to establish the violation as a substantial factor in the occurrence of damage; and (2) that the illegal act is linked to a plaintiff engaged in activities intended to be protected by the antitrust laws."

In other words, a prospective plaintiff must show first of all that there was an anti-trust violation and, if so, he must show that such violation complained of has directly injured him. Only then

does the case proceed to an inquiry into how much money, if any, will compensate the plaintiff for the injury so proved. In this regard, it should be noted that:

"An indication that some class members have not been damaged or that damages will not be measured simply by the application of a formula is also weighed against a class certification. Siegel v. Chicken Delight, Inc., 448 F.2d 43, 52, 53 (9th Cir. 1971); William Simon 'Class Actions—Useful Tool or Engine of Destruction,' 55 F.R.D. 375, 383–386 (1972); United Airlines, Inc. v. Wiener, 286 F.2d 302 (9th Cir. 1961) (noting right to jury trial as to question of damages)." *Yanai v. Frito-Lay, Inc.,* supra, page 351.

In *Simpson v. Union Oil of California,* 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98, the Supreme Court dealt with alleged violations of Sections 1 and 2 of the Sherman Act (15 U.S.C., Sections 1 and 2) wherein the allegations were that the defendant retail dealer had to sign a consignment agreement with Union Oil of one year's duration and terminable by either party at the end of any year. It was alleged that this consignment agreement was used to police the retail prices charged by the consignees. Renewals would not be made if the conditions prescribed by the company were not met. Thus, the company used the consignment agreement to set prices at which retailers could sell the gasoline. Under *these* circumstances, Justice Douglas speaking for the Court said:

"We disagree with the Court of Appeals that there is no actionable wrong or damage if a Sherman Act violation is assumed. If the 'consignment' agreement achieves resale price maintenance in violation of the Sherman Act, it and the lease are being used to injure interstate commerce by depriving independent dealers of the exercise of free judgment whether to become consignees at all, or remain consignees and, in any event, to sell at competitive prices. The fact that a retailer can refuse to deal does not give the supplier immunity if the arrangement is one of those schemes condemned by the anti-trust laws.

"There is actionable wrong whenever the restraint of trade or monopolistic practice has an impact on the market; and it matters not that the complainant may be only one merchant . . . (citations omitted)." Supra, p. 16, 84 S.Ct. p. 1054.

■ Plaintiff has isolated Section 2 of the Sherman Act and seems to urge that by proving a monopolistic practice damage is ipso facto established in every case. But Section 2 cannot be so easily separated from the Clayton Act which confers jurisdiction and standing only as to those injured in their business. Thus, the mere existence of a monopolistic practice would not ipso facto establish the *fact* of injury in every case. In the *Union Oil* case, supra, Justice Douglas and the Court dealt with alleged illegal price fixing. In such a case, every consignee and potential consignee could be members of a class in a class action anti-trust suit for the reason that, by establishing the fact of price fixing, the plaintiff establishes the fact of injury in that his ability to charge prices different from what *Union Oil* would have him charge is completely denied him. Thereby, his ability to be competitive in his own area is endangered.

This Court recognizes that there is no judicial policy which removes anti-trust suits as a matter of course from within the province of Rule 23. However, there are many varied types and categories of anti-trust suits. Comparable in effect to the price fixing type of anti-trust suit discussed in the *Union Oil Company* case, supra, is the "tie-in" type of anti-trust suit whereby a particular retailer or franchisee is sold one product only upon agreement that he purchase one or more other products. All purchasers or

potential purchasers of the product in question and the tied product, therefore, have a question of law common such as would support a class action. Furthermore, the proof would be the same as to each member of the class. Once the fact of an illegal tie-in is established, there is established a violation of the Sherman Act and consequent damage to the individual and class plaintiffs. The damage issues may arise and present themselves in the following example: ."I can't buy product A without buying product B. I don't want product B and I must have product A." While perhaps not a monetary damage, although monetary damage could be established, the fact of damage is established and an equitable relief such as an injunction prohibiting the defendant from enforcing the tie-in type of agreement would be in order and could apply to all members of the class equally upon the same limited proof.

Another example of a class action type of complaint wherein the fact of damage can be established upon the same proof as to an entire class without establishing the actual monetary damages, if any, is the action based upon the charging of usurious interest. All that need be alleged or proved to establish a class is that members of the class borrowed money from the defendant at the allegedly usurious rate or under the allegedly usurious procedure. The proof of usurious interest is then proof of the fact of damage as to each individual member of the class. The question of the amount of damage in monetary terms is another matter.

In short, Section 4 of the Clayton Act provides in pertinent part that:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . ."

The question of the amount of damages and proof thereof does not enter the Court's thinking in considering at this point the question of the manageability of the class action as such. However, the question of the "fact of damage" should and does enter into this consideration. In the instant case, the alleged monopolistic tendencies of the defendant are alleged to have injured the plaintiffs and the plaintiff class in their businesses through lost profits and generally in an inability to favorably compete. The problem in the instant case is that, while plaintiffs may actually show or establish the fact of a monopoly in the interconnect business on the part of the defendants as they have alleged, they must also show the fact of damage as to each member of the class and, further, that such damage, if any there was, was the proximate result of the alleged monopoly or monopolistic practices complained of herein. With a prospective class which might approach 500 in number at the best estimate of the named plaintiffs, proof of this fact of damage as to each member of the class becomes an unmanageable task for the Court. It is to be remembered that it is not the amount of monetary damages that is being considered here, but the fact of damage to the plaintiff and the plaintiff class and that the damage, if any, was the proximate result of the alleged monopolistic practices. In this regard, defendants' arguments with respect to the varying impact of any alleged monopoly or conspiracy to monopolize on the part of the defendants becomes, at least in part, persuasive. Assuming a violation of the Sherman Act in that defendants have monopolized or are engaged in a conspiracy to continue to monopolize the telephone interconnect business, the impact of that monopoly or conspiracy to monopolize will be different on different individual plaintiffs. Unlike the tie-in arrangements, the price fixing cases and the usurious interest cases where the impact is the same and only the amount of monetary damage different, in the instant case the impact will be different as to different individuals within the class. The fact that a monopoly exists does not necessarily mean that every individual within the plaintiff class is in fact damaged. In-

deed, some individuals in the class probably do not need any protection.[1]

Further, in this regard, with respect to the potential class members herein, the Court is dealing with a wide variety of so-called interconnect companies supplying a wide variety of services to a wide variety of customers for widely varying rates. The impact of any monopoly and, indeed, the continued existence of any monopoly is in part affected by the varying policies of the different State and municipal regulatory bodies and the Federal Communications Commission, each and all of whom regulate not only the defendant, but probably most of the plaintiffs, or at least some of them. These regulatory bodies may be in part responsible for any continuation of any alleged monopoly and, therefore, its impact on particular individuals within the class. The problem raised again is with respect to the "fact of damage". The point is at least arguable that only with great difficulty and in highly unique and unusual circumstances can the defendants be said to be damaging anyone by their alleged monopoly if in fact that monopoly, if any, is precipitated and perpetuated by the actions of a particular regulatory body of a municipality, State or the Federal Government.

▌ While not conclusive, it is certainly persuasive that potential claimed damages in excess of $15,000,000 spread over a potential class of a maximum size of approximately 500 would mean that the average claim of damage is to the extent of approximately $30,000.00. As Section 4 of the Clayton Act provides for treble damages, this would mean the recovery of $90,000.00 in addition to reasonable attorneys' fees and costs of Court. Thus, the average class member has a potential recovery of $90,000.00 plus attorneys' fees and costs of Court. The potential of such recovery is certainly not the kind of situation that Rule

23 was originally designed to protect. Rule 23 was originally designed to protect small or relatively small claimants, each of whom shared a common complaint under a common set of circumstances against a common defendant or group of defendants, but whose individual claims may not amount to very much and would, therefore, never be presented in Court except through aggregation by means of class action.

With respect to the ability of the individual class members to protect themselves, the Court takes notice of the fact that numerous informal complaints as well as formal complaints have been filed with the various State regulatory bodies and the Federal Communications Commission as well as of the fact that numerous cases have been filed in various Courts involving similar claims of violations of the anti-trust laws involving at least two or more of the four defendants herein. Such an array of activity demonstrates a certain viability in the prospective class members and a certain desire and ability to protect themselves when and where necessary

The Court now turns specifically to the question of whether or not the named plaintiffs can adequately protect the interests of the proposed class they seek to represent. As has long been the rule, in seeking to meet his burden under Rule ·23, it is necessary that a litigant show that he is a member of the class which he or she seeks to represent at the time the class action is certified by the District Court. *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). With respect first of all to the plaintiff, Northeastern Telephone Company, Inc., plaintiff has failed to meet its burden of establishing that it is a member of the class it purports to represent. There has not been alleged or shown any nexus between Northeastern Telephone Company and Southwestern Bell

---

1. It can be assumed that such corporate giants as General Telephone & Electric, Litton Industries and International Telephone & Telegraph Company, among others, would be included in the prospective class.

and/or Mountain Bell with whom North-eastern would have to show some competition in order to get through to A. T. & T. and Western Electric. Since this Court's Order dismissing all but Mountain Bell and Southwestern Bell as "Operating Companies", Northeastern Telephone Company can no longer rely on its competition with the "Bell System Operating Companies" located in and doing business in the Northeastern United States. As heretofore observed, the proposed class as defined by the plaintiffs and as limited through operation of this Court's Order dismissing all but A. T. & T., Western Electric, Mountain Bell and Southwestern Bell includes those areas of the United States wherein defendants, Southwestern Bell and Mountain Bell, provide the services outlined in plaintiffs' complaint. The definition of the proposed class as geographically limited herein, therefore, does not apply to Northeastern Telephone Company. Consequently, Northeastern Telephone Company is not, as it is required to be, a member of the class it purports to represent.

The instant suit is, therefore, left with two named plaintiffs who seek to represent a proposed class: the El Paso Telephone Company and the San Antonio Telephone Company. As the record clearly reflects, both these plaintiffs are bankrupt companies. It is doubtful that such bankrupt companies can adequately represent the interests of the other proposed class members. *Free World Foreign Corporation, Inc. v. Alfa Romeo,* 55 F.R.D. 26, 28–29 (S.D.N.Y.1972). Indeed, they have dropped the only prayed for relief which would apply to all the other non-bankrupt members of the prospective class and would specifically not apply to the two bankrupt companies. All prayer for equitable relief has been dropped. Therefore, the prayer for divestiture of Western Electric has been dropped as has the prayer for injunctive relief prohibiting American Telephone & Telegraph and Western Electric and the

operating companies from continuing the alleged conspiracy. As bankrupt companies, the San Antonio Telephone Company and the El Paso Telephone Company no longer face potential damage from the continuation of such alleged monopoly.

In attempting to meet the question of whether or not the San Antonio Telephone Company and the El Paso Telephone Company, as bankrupt companies, may continue to represent the solvent companies, plaintiffs cite the Court to the case of *Sosna v. Iowa,* supra. In that case, the Supreme Court used the doctrine of relation back in a class action case specifically to avoid the problem of mootness. The particular complained of condition no longer, through the operation of time, applied to the named plaintiff. However, at the time of the institution of the lawsuit and at the time the class action was certified by the District Court, the named plaintiff was a member of the class. The Supreme Court followed its consideration of the question of mootness with the following language:

> "In so holding, we disturb no principles established by our decisions with respect to class action litigation . . . A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the District Court . . . (citations omitted)." *Sosna v. Iowa,* supra, 95 S.Ct. pg. 559.

Again, in *Sosna v. Iowa,* at page 559, supra, the Supreme Court observed that "there must not only be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified by the district court pursuant to Rule 23,[11] but there must be a live controversy at the time this court reviews the case.[12] "

In Footnote 11, the Court made the following observation:

> "There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can

be reasonably expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and *especially the reality of the claim that otherwise the issue would evade review.*" (Emphasis added)

█ It would be unreasonable to speculate, indeed almost illogical to speculate, that after some two and a half years of litigation and one Interlocutory Appeal on the question of venue that the issue in the instant case would evade review by denial of the class action. Hence, the relation back doctrine does not apply in the instant case. The salient point is that it is not necessary that the instant case proceed as a class action in order that the issues presented not avoid review. There has been no indication whatsoever through some two and a half years of litigation that the named plaintiffs, San Antonio Telephone Company and the El Paso Telephone Company, and their attorneys will, as it were, abandon the ship at this point, especially in light of the fact that the firm trial setting is less than two months away.

█ In conclusion, the Court finds that the plaintiffs have not carried their burden in establishing the prerequisites of Rule 23. The Court finds that the questions of law or fact common to members of the proposed class do not predominate over questions affecting only individual members. The Court further finds that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy herein. More specifically, the Court finds that the members of the proposed class have a superior interest in individually controlling prosecution of separate actions. Further, concentrating the litigation of the claims alleged on behalf of the proposed class by certification of a class action herein is particularly undesirable for the reasons heretofore discussed. Finally, with respect to the manageability of this suit as a class action, each individual class member, as a prerequisite to a private suit, would have to show the *fact of damage.* Thus, as heretofore discussed, we are left with proving the fact of damage as to each and every one of some 500 individuals within the proposed class. Such a task is beyond the capability of one Court and one six man Jury. Such task should be accomplished on an individual or at least a small group basis through use of the individual suit and/or the method of intervention where applicable.

For each and all the reasons discussed herein, it is therefore ordered, adjudged and decreed that plaintiffs' Motion to Maintain Class Action be, and the same is hereby, in all things denied.