**Rita J. McCOY, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**CONVENIENT FOOD MART, INC., et al., Defendants.**

**Frances HOAGLUND and Richard R. Paul, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CONVENIENT FOOD MART, INC., et al., Defendants.**

**Nos. 72 C 1860, 73 C 3004.**

United States District Court, N. D. Illinois, E. D.

Oct. 3, 1975.

Donald C. Gancer, of Querrey, Harrow, Gulanick & Kennedy, Chicago, Ill., and Warren D. Mulloy, Philadelphia, Pa., Specks & Goldberg, Chicago, Ill., for plaintiff in No. 72C1860.

Barry L. Kroll and Charles C. Kirshbaum, Chicago, Ill., for C. Bresler Ice Cream Co. and Convenient Food Mart in No. 72C1860.

Earl A. Jinkinson and Robert D. Tyler, Chicago, Ill., for Scot Lad Foods Inc. in No. 72C1860.

David Berger, Warren D. Mulloy, Bruce K. Cohen, Warren Rubin, David Berger, P. A., Philadelphia, Pa., Harold Brown, Brown & Leighton, Boston, Mass., Donald C. Gancer, Querry, Harrow, Gulanick & Kennedy, Chicago, Ill., Perry Goldberg, Specks & Goldberg, Ltd., Chicago, Ill., for plaintiffs in No. 73C3004.

Charles C. Kirshbaum, Barry L. Kroll, Robert D. Tyler, Jr., Douglas S. Moore, Pope, Ballard, Shepard & Fowle, Edward T. Joyce, Chicago, Ill., for defendants in No. 73C3004.

## MEMORANDUM DECISION

MARSHALL, District Judge.

These private anti-trust actions now brought solely by former Convenient Food Mart franchisees on behalf of themselves and others similarly situated are here under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2), and Sections 3 and 4 of the Clayton Act (15 U.S.C. §§ 14 and 15).[1] In both cases plaintiffs seek only money damages. Presently pending is plaintiffs' motion to certify a national class of former retail franchisees of Convenient Food Marts pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

On October 31, 1974, a somewhat similar motion was denied for reasons stated in a memorandum decision of that date. Plaintiffs maintain that they have tracked that decision to the end that certification of the class they seek to represent should be pro forma. Defendants, on the other hand, vigorously oppose class certification upon four grounds: lack of numerosity under Rule 23(a)(1), inadequacy of representation

---

1. The third consolidated amended complaint represents the pleadings of plaintiffs in two cases. Other cases in the group have either been settled or are pending separately without adoption of the consolidated complaint. The litigation began in 1970 with the first filed case, *Halverson et al. v. Convenient Food Mart, Inc., et al.*, 70C 499, which has now been settled. Counsel for the plaintiffs in several of the cases devoted most of their energies to obtaining class certification under Rule 23. The history of the litigation and counsel's preoccupation with Rule 23 gives pause to the value of that procedural device in cases of this type.

under Rule 23(a)(4), lack of common issues of fact under Rule 23(a)(2) and unmanageability or lack of superiority under Rule 23(b)(3). These objections will be considered seriatim after a brief resume of the overall nature of the business involved, the allegations of plaintiffs' third consolidated amended complaint and the thrust of the decision of October 31, 1974 as it relates to the present motion.

Convenient Food Marts are neighborhood food stores independently owned and operated under a franchise which originates with defendant, Covenient Food Mart, Inc. (CFM). CFM uses a stratified system for granting retail store franchises. It licenses regional franchisors in designated areas as outlets for the retail franchises. Anyone desiring a retail franchise must negotiate with the regional franchisor in his area. CFM maintains control, however, by requiring the regional franchisors to grant retail franchises only in accord with the terms of a standard agreement which is attached and expressly made a part of the regional franchisor's agreement with CFM.

The regional franchisors in every region except Region 8—Chicago—are independent business entities. In Region 8 CFM is the regional franchisor. The named plaintiffs in these consolidated actions are former retail franchisees in Nebraska and Massachusetts. Plaintiff Rita McCoy obtained her retail franchise from CFM of Nebraska, Inc., which is not a party. Plaintiffs Hoaglund and Paul obtained their franchise from CFM of New England, Inc., which is not a party. None of the plaintiffs obtained their franchise directly from CFM which is the prime defendant.

Defendant Scot Lad Foods, Inc. is alleged to own 50% of the stock of defendant CFM. One of its divisions, Meadowmoor Dairy, is a Chicago dairy. The third and final defendant is Bresler Ice Cream Company. It is alleged that the owners of Bresler own 50% of the stock of CFM. Bresler manufactures and sells ice cream products.

At the time of the October 31, 1974 decision denying class certification, the then plaintiffs [2] alleged a monopoly, an attempt to monopolize and a conspiracy in the furnishing of business premises for food marts, and in the sale and distribution of food mart products to the public. In essence, plaintiffs claimed that CFM, pursuant to a conspiracy among the named defendants and CFM, regional franchisors, had used its registered name in violation of Sections 1 and 2 of the Sherman Act and 3 of the Clayton Act in that (1) a CFM franchise was obtainable only if the business premises were leased from Convenient Franchise Leasing Corporation (a wholly owned subsidiary of CFM) or a CFM regional franchisor, and (2) the franchise agreement required each retail franchisee to purchase and use only such products as are designated by CFM and to order exclusively from suppliers approved for quality by CFM. Plaintiffs sought certification of a national class of present and former CFM retail franchisees and they sought both money damages and injunctive relief.

In essence, the October 31, 1974 decision denying class certification was premised on the following conclusions. First, it was assumed that the requirements of Rule 23(a) were met. Second, Rule 23(b)(2) was rejected because plaintiffs sought money damages (indeed it was the only relief available to

2. At that time the plaintiffs in a second consolidated amended complaint were those in *Roger O. Halverson et al. v. Convenient Food Mart, Inc., et al.*, 70C 499, *PJP Corporation v. Convenient Food Mart, Inc., et al.*, 72C 1848, and *Rita McCoy v. Convenient*

*Franchise Leasing Corporation et al.*, 72C 1860. The *Halverson* and *PJP* cases were settled. McCoy has joined forces with Hoaglund and Paul, and Convenient Franchise Leasing Corporation has been dropped as a defendant.

former franchisees), and 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Advisory Committee Notes to Rule 23. The difficult inquiry was whether the case could proceed as a 23(b)(3) action: that is to say, did it sufficiently involve "questions of law or fact common to the members of the class [which predominated] over any questions affecting only individual members"? Rule 23(b)(3). The conclusion was reached that insofar as plaintiffs complained of an alleged illegal tie of food products to the Convenient name, their case appeared suitable for 23(b)(3) treatment. Relying on *Siegel v. Chicken Delight, Inc.*, 271 F. Supp. 722 (N.D.Cal.1967), *modified sub nom. Chicken Delight, Inc. v. Harris*, 412 F.2d 830 (9th Cir. 1969), it was observed that "if the *sole* question is whether a *standardized* trademark protection clause, however worded, constitutes a violation of the anti-trust laws, a class action is the appropriate mode for testing the legality of the clause for it is the standard form franchise agreement which forms the focal point of the allegedly illegal acts and thus establishes a 'common nucleus of operative facts' permitting class treatment." (Emphasis supplied.) Assuming that coercion is a necessary element of an unlawful tying arrangement, it was concluded that it could be inferred on a class-wide basis from the standardized contractual provision, for contractual provisions are in and of themselves coercive because they are backed by force of law. Thus it was concluded in the posture of the case as then presented that liability to the class on the alleged food-name tie could be established without consideration of individual claims.

Insofar as the alleged tie between premises and the Convenient name was concerned, a different conclusion was reached. Nowhere in the franchise agreement was it provided that the retail franchisee must lease his premises from a regional franchisor. Plaintiffs asserted that the practical economic effects of various provisions in both the retail franchise and regional franchisor agreements were to compel the franchisee to obtain his premises from the regional franchisor. But the conclusion was reached that the determination of the anti-trust consequences of the alleged lease-name tie required a factual determination in respect to each franchisee-lessee. Accordingly, 23(b)(3) commonality of fact was absent on that issue and because plaintiffs pressed both contentions, class certification was denied.

The third consolidated amended complaint of the present plaintiffs does not allege a premises-name tie. It persists in a form of food products-name allegation and adds a food mart-equipment-name allegation. It alleges that the regional franchisors (of which there are 31) are unnamed, unsued co-conspirators. It then alleges that "defendants Convenient, Scot Lad Foods and Bresler and their co-conspirators [i. e., the regional franchisors] have engaged in an unlawful combination and conspiracy to restrain and monopolize, and have attempted to monopolize, and have monopolized and restrained interstate trade and commerce in the United States in the furnishing of the equipment required for the operation of retail food marts [and in the sales and distribution of food mart products to the public] in violation of Sections 1 and 2 of the Sherman Act." Third Consolidated Amended Complaint, ¶¶ 14, 22. Plaintiffs aver that these alleged violations "have been carried out mainly by means of the provisions of the [retail] franchise agreement." *Id.* ¶¶ 15, 23. In respect to the alleged equipment-name tie plaintiffs state that under ¶ 16(3) of the retail franchise agreement, the franchisee must "purchase all of the equipment required in the operation of the business from such firms as shall meet

[CFM's] specifications and requirements of a uniform operation." Then, upon information and belief, plaintiffs allege that CFM "has designated the suppliers from which such equipment must be purchased and that [CFM] and regional franchisor co-conspirators have secretly received commissions on the purchase price to plaintiffs of the equipment required for the operation of their food marts." Insofar as the food-name tie is concerned, plaintiffs allege that under ¶ C–1 of the retail franchise agreement, the franchisee must "purchase, sell and use such products . . . as designated by [CFM], and to be ordered exclusively from suppliers approved by CFM for quality" and under ¶ C–20 of the agreement, the retail franchisee "agrees to sell, use and distribute only such products as are designated and approved by [CFM] which products are to be purchased by [the retail franchisee] from suppliers approved by [CFM]." The plaintiffs then continue in respect to the food-name tie to allege that "the defendants, acting through defendant Convenient, and pursuant to . . . the [retail franchise agreement]" required the plaintiffs and other franchisees to purchase all of their requirements of general merchandise through a food wholesaler named by the defendant Convenient. On information and belief, plaintiffs state that "in connection with said purchases of general merchandise, defendants received direct and indirect monetary benefits." *Id.* ¶ 24. However, in the next breath plaintiffs allege, "the price for supplies of general merchandise which the plaintiffs and other franchisees were required to purchase from suppliers designated by defendant Convenient and/or co-conspirator regional franchisors under the terms of the [retail] franchise agreement are greater than would be paid if competing sellers could supply them." *Id.* ¶ 26.

These cases have been pending so long and so much discovery has been engaged in on the question of class certification, and so many reports have been filed and briefs written on that subject that there are times when it appears that the merits are being tried under the guise of a motion for class certification. But these plaintiffs have presented a fresh complaint and it is the allegations of that fresh complaint, supplemented to a degree by the additional materials that have been submitted by the parties, which should determine the question of class certification.

The questions of numerosity and adequacy of representation under 23(a) are troublesome. These plaintiffs remain content with the same numerosity data as was submitted previously when the then plaintiffs sought to represent all present as well as former Convenient franchisees. But for the purposes of what is decided here, the assumption is made that numerosity is present.

The question of adequacy of representation is disturbing because plaintiffs Hoaglund and Paul are alleged to be in debt to their regional franchisor, CFM of New England, Inc., in the amount of $103,939.88. McCoy is alleged to be indebted to her regional franchisor, CFM of Nebraska, Inc., in the amount of something in excess of $5,400. In these circumstances, and particularly in the case of Hoaglund and Paul, there is a substantial risk that the named plaintiffs' personal interests will get in the way of their representative obligations. Here again, the assumption is made that that problem could be treated by severing any counterclaim made against the named plaintiffs, supervising any settlement to the end that the alleged indebtedness of the named plaintiffs to the defendants could not be washed out unless all members of the class received a recovery commensurate with the washout, and close inquiry with respect to the amount and handling of any attorneys' fees which make up any portion of a settlement.

Turning to Rule 23(b), it is clear that the present complaint does not qualify

for class certification under either subparagraph (1) or (2). Once again, then, attention is confined to subparagraph (3) and its requirements that "questions of . . . fact common to the members of the class predominate over any questions affecting only individual members." That is, class claims must have a dominant central focus. Is there an essential common factual link between all class members and the defendants?

Plaintiffs have not contented themselves to rely upon the alleged standard form of franchise agreement and an alleged uniform pattern or policy on the part of the named defendants to implement, enforce and require compliance with the allegedly illegal provisions of the agreement. In respect to both the equipment and food-name ties, plaintiffs allege that "the co-conspirators are the 'regional' franchisors who used the form of [retail] franchise agreement required by defendant Convenient and who enforced the illegal actions charged in the complaint for the mutual benefit of themselves and of defendant Convenient." Third Consolidated Amended Complaint, ¶ 9.

In respect to the equipment-name tie in particular, plaintiffs allege that while defendant CFM designates the suppliers from which such equipment must be purchased, that "defendant ·Convenient and regional franchisor co-conspirators have secretly received commissions on the purchase price to plaintiffs of the equipment required for the operation of their food marts." *Id.* ¶ 15. In this respect the complaint proceeds to allege that "competitors of . . . the co-conspirator regional franchisors and/or the designated vendors in the furnishing of equipment necessary for the operation of a retail food mart were prevented from dealing with the plaintiffs." *Id.* ¶ 17(B).

In respect to the food-name tie, having alleged the offensive provisions of the retail franchise agreement, plaintiffs first aver that they are required "to purchase all of their requirements of general merchandise through a food wholesaler named by the defendant Convenient . . . [and] that with said purchases of general merchandise defendants [CFM, Scot Lad and Bresler] received direct and indirect monetary benefits." *Id.* ¶ 24. Yet in the next breath they allege that suppliers were "designated by defendant Convenient and/or co-conspirator regional franchisors." *Id.* ¶ 26.

It is obvious from the face of the complaint that plaintiffs do not rely principally upon the alleged offensive provisions of the retail franchise agreements. Those provisions are not illegal on their face. *Thompson v. T. F. I. Companies, Inc., et al.*, 64 F.R.D. 140 (N.D.Ill.1974); *Smith v. Denny's Restaurants, Inc.*, 62 F.R.D. 459 (N.D.Cal. 1974); *Abercrombie v. Lum's, Inc.*, 345 F.Supp. 387 (S.D.Fla.1972). Plaintiffs will be obliged to prove in their own behalf and in behalf of all others similarly situated that the provisions were unlawfully used as alleged in the complaint. In light of the allegations of the complaint, this proof will necessarily involve the conduct of the regional franchisors of which there are 31, vis-a-vis the retail franchisees who comprise the class. The individuality of factual issues thus predictable is not conducive to 23(b)(3) certification.

The motion for class certification is denied. The cause is set for report on status and to establish a discovery and trial schedule on the merits on October 29, 1975 at 10:00 a. m.