CHESTNUT FLEET RENTALS, INC., et al.

v.

HERTZ CORPORATION et al.

Civ A. No. 75–1889.

United States District Court, E. D. Pennsylvania.

Oct. 20, 1976.

---

David L. Creskoff, Philadelphia, Pa., for plaintiffs.

Seymour Kurland, Joseph A. Tate, B. M. Quigg, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This action involves charges of antitrust violations in the airport automobile rental business. Plaintiffs allege that defendants conspired to fix prices, restrain trade in and monopolize the rental market and that they acquired and maintain monopoly power by illegally restricting competitors from gain-

ing airport rental concessions in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Plaintiffs, automobile rental companies which have business locations predominantly off-airport, are engaged in short-term rentals of automobiles to the general public. Defendants are the nation's largest three automobile rental companies.

█ Plaintiffs seek certification under Rule 23, Fed.R.Civ.P. of a class consisting of all persons, firms, corporations, or other entities in the United States, other than defendants, their franchisees and co-conspirators, who are engaged in the business of leasing automobiles to the general public by the hour, day, week or other period of time which does not extend to long-term leasing. By stipulation, the parties agreed to proceed with discovery on this issue. The appropriate discovery was completed and reviewed. After hearing oral argument and considering the able briefs of the respective parties, we have concluded that this case is not appropriate for certification as a class action.

█ Plaintiffs bear the burden of satisfying all of the requirements of 23(a)[1] and at least one of the subsections of 23(b), *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440, 447 (E.D.Pa.1975). Once the mandatory prerequisites of 23(a) have been met, the court considers whether the class may be certified under one of the subsections of 23(b). *Katz v. Carte Blanche Corp.*,

496 F.2d 747 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).[2] Moreover, the central issue raised in a motion for certification is whether a class action is appropriate, not the probability of plaintiffs' success on the merits of the substantive claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).

. While defendants have attacked the propriety of class certification on a number of broad fronts, it will be helpful to narrow the issues by reciting what is not in issue. Defendants have not disputed that the proposed class—estimated by plaintiffs to total between 13,000 and 15,000 members—is so numerous that joinder of all members is impracticable, satisfying the "numerosity" requirement of 23(a)(1), and they concede that the case presents some questions of law or fact common to the class, satisfying the "commonality" requirement of 23(a)(2). Defendants readily admit that plaintiffs' counsel are experienced, able and highly qualified to litigate a class action.[3] However, they vigorously argue that the plaintiffs' claims are not "typical" of those in the proposed class, 23(a)(3), and that the plaintiffs will not fairly and adequately protect the interests of the class members because not only do they have interests which are antagonistic to those of the rest of the class,

---

**1.** 23(a) provides:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

**2.** Plaintiffs have apparently restricted their motion for certification to a class under 23(b)(3) (Tr. 16). 23(b)(3) provides:

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(3) the court finds that the questions of law or fact common to the members of the class

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

**3.** Even if defendants did not concede this point, we would have absolutely no hesitation whatsoever in finding plaintiffs' counsel capable of successfully litigating a class action.

but they also lack standing to sue on behalf of the proposed class as required by 23(a)(4).

Defendants also contend that even if the requirements of 23(a) are deemed satisfied, certification would not be appropriate under 23(b)(3). Because the issues raised under 23(b)(3) are so closely related to their contentions raised under 23(a)(3), we will consider them together in order to present a coherent discussion of the reasoning for our conclusion that the case may not proceed as a class action. We discuss the 23(a)(4) issues first.

### The 23(a)(4) Issues: Conflict of Interest and Standing

A representative plaintiff must fairly and adequately protect the interests of the class. Defendants contend that plaintiffs will not fairly and adequately protect the interests of the putative class members. Since the gravamen of the complaint is illegal foreclosure of the airport automobile rental market, they argue, that since the plaintiffs' injury, as well as that of putative class members, must necessarily derive from the amount of business not done in a market that is limited ánd fixed, their interests are inherently antagonistic. The named plaintiffs will be interested in maximizing their own damage recovery, which must necessarily diminish the potential recovery of other class members. In addition, each potential class member who wishes to establish a rental location "on airport" necessarily has an interest in preventing other competitors, members of the class, from similarly competing "on airport".[4]

In addition, defendants argue that the system used by the American International Rent-A-Car Corporation and the "AI" licensee plaintiffs herein constitutes an illegal price-fixing conspiracy,[5] which will trigger an antitrust counter-claim against the named plaintiffs. In defending the counter-claim, the plaintiffs will be diverted from pressing their claims on behalf of the class by the necessary devotion of substantial effort and money to that defense.

Defendants also point out that one of the plaintiffs unsuccessfully litigated antitrust claims, similar to those asserted herein, concerning the Denver Airport, *Trans World Associates v. City and County of Denver*, 1974–2 CCH Trade Cases ¶ 75,293 (D.Colo. 1974), and they argue that the *res judicata* effect of that final judgment will place plaintiffs on the horns of an insoluble dilemma—the Denver litigation will either bind plaintiffs as to all claims raised herein, thus rendering them inadequate as class representatives, or will bind them only as to the Denver Airport. In the latter case, therefore, plaintiffs would necessarily subscribe to defendants' theory that the unique competitive situation prevailing at each airport compels an airport-by-airport evaluation of the law and facts, tantamount to more than two hundred minitrials.[6]

Finally, defendants contend that plaintiffs lack standing to assert claims on behalf of those class members who do not presently have concessions at airports where plaintiffs have established such concessions and, conversely, where other members are located, but where plaintiffs are not. Moreover, they argue, discovery has shown that many of the class members have no interest in locating on-airport, or may not have the present financial or managerial capability to do so, or may have established rental locations off-airport in order to provide discount rental rates and cheaper services.

Plaintiffs have attempted to minimize the force of these arguments by concentrating on the importance of the common injuries allegedly suffered by each member of

---

**4.** The number of concessions available at any one airport is necessarily limited by the amount of space allocated for such purposes by the airport authorities. Thus, there is competition for the limited spaces available by those class members who are not currently operating "on-airport" and competition among those "on airport" for the most advantageous locations.

**5.** Plaintiffs allegedly agreed, in writing, to discount "national accounts" at rental rates not otherwise available.

**6.** This argument is more fully discussed in connection with the issues raised under 23(a)(3) and 23(b)(3), *post.*

the putative class and the unifying impact of defendants' allegedly illegal conduct. Specifically, they contend they have satisfied the standing requirement because they not only *have* concessions at certain airports, *e. g.*, Atlanta, but also have "off-airport" locations and were illegally blocked in their attempts to obtain on-airport concessions, *e. g.*, Tampa and Miami. Thus, they are appropriate plaintiffs to represent all of the interests of all of the class members.[7] The damage aspect of the case—the business *not* done—is a relatively minor problem, they argue, since damages can be suitably resolved as to each member of the class after the completion of the major unifying issue in the case, defendants' liability. The Denver litigation, plaintiffs argue, is merely a "red herring" because that litigation neither detracts from plaintiffs' ability to litigate the action on behalf of the class nor can it be considered *res judicata* since it only involved the Denver Airport and did not involve the exact issues presented herein.

As to defendants' counter-claim, plaintiffs point out that it has not yet been filed, and, even if filed, would have no special relevance to the issues raised in the motion for class certification. Admitting that their interests may be different from some of the members of the putative class, they argue that exact identity, coextensiveness and homogeneity of interests are virtually impossible and, at any rate, never required under 23(a)(4).

■ We are not convinced that plaintiffs will fairly and adequately protect the interests of the class as required by 23(a)(4). In antitrust cases, as in any class action, the court must ascertain the interests of the named plaintiffs and compare those interests with those of the putative class members. Obviously, if these interests conflict or are antagonistic, a class action should not

be certified. *Al Barnett & Son, Inc. v. Outboard Marine Corporation*, 64 F.R.D. 43 (D.Del.1974); *Matarazzo v. Friendly Ice Cream Corp.*, 62 F.R.D. 65 (E.D.N.Y.1974).

In this case, each of the potential class members is a competitor in the sense that each operates in the same relevant market[8] and each competes for the fixed amount of business which this market generates. An illegal foreclosure of this limited market will necessarily generate a limited amount of damages. Since the named plaintiffs and the class members are competitors for this business, they will necessarily compete for the limited damages attributable to illegal foreclosure in the market. Plaintiffs' attempt to maximize their own damage recovery will conflict with the interests of the class because maximization of plaintiffs' damages will limit the amount of damages left for the class members to share. This contrasts sharply with the antitrust case in which the class is composed of consumers who paid illegally inflated prices for a particular commodity or service. *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440 (E.D.Pa.1974) (class of former franchisees certified to litigate alleged illegal tie-in arrangements); *City of Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 67 (E.D.Pa.1971) (class of consumers certified); *Herrmann v. Atlantic Richfield Co.*, 65 F.R.D. 585 (W.D.Pa.1974) (class of former lessees); *Barr v. WUI/TAS, Inc.*, 66 F.R.D. 109, 115 (S.D.N.Y.1975) (class of customers of telephone answering service); *Accord In re Ampicillin Antitrust Litigation*, 55 F.R.D. 269 (D.D.C.1972); *Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484 (N.D.Ill.1969). In these cases, there was no competition among class members since damages were suffered and proved in an entirely different manner.

■ In antitrust cases charging competitive foreclosure of a limited market,

---

7. Moreover, plaintiffs point out that 23(c)(2)(A) will be available to members of the class who choose to "opt out".

8. As defined by plaintiffs in their complaint at ¶ 13:

"The market encompassed by this complaint is the market for passenger automobile rentals originating at rental service locations on airport premises throughout the United States and its territories (hereafter 'the on-airport automobile rental market') * * *".

damages must be measured by the amount of business "not done". When the named plaintiff seeks to represent a class consisting of competitors for this business "not done", numerous courts have concluded that the inherent conflicts in apportioning damage prevented satisfaction of the adequacy requirement of 23(a)(4). *Al Barnett & Son, Inc. v. Outboard Marine Corporation, supra* (class not certified where class composed of competitors for business "not done"—class members' interests "antagonistic"); *Matarazzo v. Friendly Ice Cream Corp., supra* (former franchisee could not represent present franchisees); *see also McMackin v. Schwinn Bicycle Co.*, 354 F.Supp. 1154, 1974 CCH Trade Cases, ¶ 75–047 (N.D.Ill.1973); *Lupia v. Stella D'Oro Biscuit Co.*, 1974 CCH Trade Cases, ¶ 75,046 (N.D.Ill.1972); *DiCostanzo v. Hertz Corp.*, 63 F.R.D. 150 (D.Mass. 1974). In the context of this case, we are confronted with the same situation: recovery of any amount of damages on behalf of the named plaintiffs will perforce diminish the amount of damages recoverable by the other class members for the amount of business "not done" at any particular airport. The same competitive posture of the class members and the named plaintiffs creates another conflict of interest as well, since each must compete with the other for the uniquely limited space, by virtue of governmental regulation, available at a given airport for rental locations. Because of the nature of this class, composed of members who have identical interests in exploiting the limited market for their own benefit, we conclude that the interests of the named plaintiffs are inherently antagonistic, rendering adequate representation unlikely.

We cannot subscribe to plaintiffs' facile assessment that this problem may be solved by treating the question of damages as to each member of an individual basis at some later stage in the proceedings. The conflicting interests of the class permeate the entire case.

In addition to these conflicts of interest, there are serious questions underlying plaintiffs' standing to represent class members who were unsuccessful in obtaining rental counters at those airports where one of the plaintiffs is established. Conversely, the same problem is presented as to those airports where class members, such as Budget Rental, have been successful in obtaining rental concessions, but plaintiffs have not. An additional factor complicating plaintiffs' standing is presented as to those airports, on the West Coast, for example, where plaintiffs have never attempted to secure an "on-airport" concession. Discovery has disclosed that some class members, *e. g.* Richard Leasing, Ltd. of Phoenix, Arizona, and Thrifty Rent-A-Car, operate by choice "off-airport" in order to offer discount rental rates. Moreover, we are troubled not only by the Denver judgment and the possible difficulties presented by the doctrine of *res judicata*, but also by the potential antitrust counter-claim since both issues might seriously drain the representative plaintiffs' time, energy and resources and, at the same time, divert their attention away from vigorous protection of the interests of the class. *See Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976), *cert. denied*, —— U.S. ——, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *McCoy v. Convenient Food Mart, Inc.*, 69 F.R.D. 337 (N.D.Ill.1975); *DiCostanzo v. Hertz Corp.*, 63 F.R.D. 150 (D.Mass.1974); *Yanai v. Frito-Lay, Inc.*, 61 F.R.D. 349 (N.D.Ohio 1973). On balance, we conclude that plaintiffs have not asserted a strong case for certification under 23(a)(4) in light of the inherent conflicts with other class members, the difficulties hindering their standing and the possibility that they would not fairly and adequately represent other class members.

*The 23(a)(3) and 23(b)(3) Issues: Typicality, Predominance and Superiority*

Under 23(a)(3), a class may not be certified if the claims or defenses of the representative parties are not typical of the claims or defenses of the class. A class may not be certified under 23(b)(3) if the questions of law or fact common to the class do not predominate over questions affecting only individual members, or the class action is not a superior method for fair and effi-

cient adjudication of the case. Defendants claim that plaintiffs have failed to satisfy either one of these subsections and have, at the same time, demonstrated that the individual questions of both law and fact heavily predominate over any common issues. Defendants emphasize that the market is heterogeneous since it is comprised of almost two hundred major airports nationwide, and contend that plaintiffs face at least as many individual factual and legal issues. Because the competitive matrix at each airport is unique, they contend, the factual proofs will have to be so tailored; and, in addition, separate determinations would have to be made as to the defenses asserted under the *Parker*[9] and *Noerr-Pennington* doctrines[10]. Moreover, defendants argue that proof of liability under the Sherman Act must necessarily proceed, not en masse, but as to each individual member of the class, presenting individual factual and legal questions in each instance.

Plaintiffs counter that their claims—that defendants illegally foreclosed the airport automobile rental market—are typical of those of the class, and that this question and related ones[11] predominate over all others. As to the damage aspect of the case, they contend that the case may proceed as a class action on the question of an antitrust violation, and then it can be decertified or submitted to a master to consider the question of damages for each class member. The class action mechanism, they contend, is the superior method of vindicating the injury to the class and to the public because it enables the many small class members, who could not proceed on their own to redress their injury promoting judicial economy and fairness by preventing burdensome, expensive, time-consuming and possibly contradictory litigation if suits by each member were brought separately.

Plaintiffs, in our opinion, have neither satisfied the "typicality" requirement of 23(a)(3) nor demonstrated that common questions predominate over the diverse individual issues of law and fact. Moreover, we cannot agree that a class action is a superior method for the fair and efficient adjudication of the case.

■ In order to analyze this case from the perspective of 23(a)(3) and (b)(3), we start with the elements of plaintiffs' proof necessary to establish defendants' liability under the Sherman Act, §§ 1 and 2. First, plaintiffs must prove that defendants' actions in some manner violated the antitrust laws, showing, for example, a contract or conspiracy to restrain trade in the relevant market or an attempted monopoly or abuse of market power. Next, plaintiffs must show that there is a nexus, a causal connection, between the violation and the plaintiffs' injury. *Zenith Radio Corp. v. Hazletine Research, Inc.*, 395 U.S. 100, 89 S.Ct.

**9.** *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) (Governmental action immunity).

**10.** *Eastern R.R. Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (First Amendment protection of attempts to influence legitimate governmental action). In *Trans World Associates v. City and County of Denver, supra,* both of these defenses were raised.

**11.** Plaintiffs list these questions as follows:
"* * * [W]hether defendants combined and conspired to establish a monopoly of the on-airport automobile rental market; whether defendants combined and conspired to submit common bid specifications and contractual provisions for airport automobile rental counters and locations; whether defendants combined and conspired to establish contractual provisions and eligibility criteria in airport automobile rental concession contracts which had the effect of raising barriers to entry into and excluding competitors from on-airport rental markets; whether, individually and amongst themselves, in anticompetitive actions, including harassment, defendants prevented competitors from penetrating the on-airport rental markets; whether defendants individually and in combination have prevented competitors from acquiring favorable locations for their rental counters and parking facilities in the on-airport automobile rental market; whether the defendants conspired to fix and stabilize prices for automobile rentals in the on-airport automobile rental market; and whether the acts of defendants, if proved, violate the antitrust statutes of the United States."
Plaintiffs' brief at 10, 11.

1562, 23 L.Ed.2d 129 (1969); *Sound Ship Bldg. Corp. v. Bethlehem Steel Co., (Inc.)*, 533 F.2d 96, 98 (3d Cir. 1976), *cert. denied*, —— U.S. ——, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Stated differently plaintiffs must demonstrate the "fact of damage", *Rea v. Ford Motor Company*, 497 F.2d 577 (3d Cir.), *cert. denied*, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974), by showing that the violation was a substantial factor causing the damages and, in addition, the amount of damages. *Sound Ship Bldg. Corp., supra.*

In this case, the market is heterogeneous and fragmented. Each airport presents a different factual and legal problem because each is subject to different state or local operating rules, ordinances, and regulations.

The competitive situation at airport A in state A is likely to be quite different from airport B in state B. Even within the same state, the airports may be regulated and operated in a different fashion by different municipalities. Thus, to establish liability under the antitrust laws, plaintiffs must necessarily proceed with proof on an airport-by-airport basis since each presents a unique competitive environment. While sub-classes or issues may be certified separately under 23(c)(4)(A) and (B), we conclude that the highly diverse nature of the market effectively thwarts sharp definitions of subclasses and there is no predominate common issue which can be effectively severed for separate class treatment. In addition, defendants will likely assert, airport by airport, defenses under *Parker v. Brown, supra*, and under *Eastern Railroads Presidents Conf. v. Noerr Motor Freight, supra. See e. g. Trans World Associates v. City and County of Denver, supra.* The applicability of these defenses can only be determined by applying them to the set of facts prevailing at any one airport. Then there is the overriding requirement that *each* individual class member come forward to show the requisite "fact of damage" as to each airport under consideration, certain-

ly not a simple, uncomplicated procedure since the damages each claims are for business "not done".

We do not agree with plaintiffs' view that these questions are typical in the sense that the proofs required are shared in common by the class members. The proof required to show an injury for competitive foreclosure includes proof of the anticompetitive effect on the business of each class member.

This case, therefore, is not at all analogous to antitrust cases in which the question of antitrust violation predominated, *see City of Philadelphia v. American Oil Co., supra; Barr v. WUI/TAS, Inc., supra; Herrmann v. Atlantic Richfield, supra; Aamco Automatic Transmissions v. Tayloe, supra; Professional Adjusting Systems of America Systems of America, Inc. v. General Adjustment Bureau*, 64 F.R.D. 35 (S.D.N. Y.1974). Because in each of the cited cases the question of a class member's damage after proof of an antitrust violation was relatively simple and could be determined, for example, by proof of purchases of a product or by the application of a standard recovery formula. Here, the fact of damage will be entirely an individual consideration not resolvable by the expedient of a simple accounting formula.

In antitrust cases where the gravamen of the complaint is illegal competitive foreclosure as it is here, resulting in damages for business "not done", class actions have been denied because the predominant question is, not the issue of a violation of the antitrust laws in the abstract, but whether a particular member was damaged and, if so, by how much. In *Windham v. American Brands, Inc.*, 68 F.R.D. 641 (D.S.C.1975), a class action asserted by tobacco farmers who allegedly "lost profits" due to defendants' illegal bid rigging conspiracy was denied because of the overwhelming predominance of individual questions as to the "fact of damage". In *San Antonio Telephone Co. v. American Telephone & Telegraph Co.*, 68

F.R.D. 435, a class action was not certified because the damages alleged—lost profits due to inability to compete—were questions which depended on the peculiarities of each putative class member's competitive posture which could only be proved on a member-by-member basis. And in *In re Transit Co., Inc. Antitrust Litigation*, 67 F.R.D. 59 (W.D.Mo.1975), the predominance of individual questions as to the fact and amount of damages, individualized defenses based on localized conditions and the inapplicability of damages based on a common fund barred certification. In *Ungar v. Dunkin' Donuts*, 531 F.2d 1211 (3d Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), the Court determined that a class of franchisees, who alleged illegal ties could not maintain a class action because the requisite proof of coercion necessary to show an illegal tie was not based on common express contractual terms, but had to be shown on an individual-by-individual basis. *See also Shumate & Co., Inc. v. Nat'l Assn. of Sec. Deal., Inc.*, 509 F.2d 147, 155 (5th Cir. 1975); *In re Telephone Charges*, 500 F.2d 86 (9th Cir. 1974); *Al Barnett & Son, Inc. v. Outboard Marine Corporation, supra ; Matarazzo v. Friendly Ice Cream Corp., supra ; Wm. R. Holland v. The Goodyear Tire & Rubber Co.*, 1975–2 CCH Trade Cases ¶ 60,522 (N.D.Ohio 1975); *McCoy v. Convenient Food Mart, Inc.*, 69 F.R.D. 337 (N.D.Id.1975); *Smith v. Denny's Restaurants*, 62 F.R.D. 459 (N.D.Cal.1974); *Yanai v. Frito-Lay, Inc.*, 61 F.R.D. 349 (N.D.Ohio 1973); *Shaw v. Mobil Oil Corp.*, 60 F.R.D. 566 (D.N.H.1973). *But see Professional Adjusting Systems of America, supra.*

In our view of this case, the individual questions far outweigh and dominate the common ones. The competitive climate at each one of the many airports nationwide must be demonstrated, since each is governed by particular rules, regulations, ordinances and policies unique to it. Then the relevant class members must be established on an individual-by-individual basis as to each airport; i. e., which members of the putative class were interested in a rental concession at any particular airport, which ones had the business capability to do so, what efforts to that end were made, was there any damage in the legal and factual senses, and, if so, how much. Moreover, the *Parker* and *Noerr* defenses might become applicable as each class member and/or competitive area is examined and an individually tailored rebuttal of defendants' defenses may be required. Thus, not only must the case proceed on an individual-by-individual basis, but also airport-by-airport, and beyond even these highly fragmented considerations lies the question of the *res judicata* effect of the Denver litigation as to the plaintiffs, putative class members and as to each airport. The only arguable common question which connects all these diverse satellite issues is whether defendants' conduct, viewed on a nationwide scale, violated the antitrust laws. Contrary to plaintiffs' blandishments, we do not feel that this one issue predominates over the myriad important individual questions involved in this case.

We need not go into a detailed and lengthy analysis of the various factors suggested in the 23(b)(3) requirement that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. Under 23(b)(3)(A) it appears that individual members may be more likely to want to control the prosecution of individual actions, rather than relying on the named plaintiffs, due to the potential counter-claims, the Denver litigation already decided adversely to one of the plaintiffs, and the conflicting interests of the putative class members, all of whom are competitors. Also, class members have already shown a willingness to litigate on their own, 23(b)(3)(B). Budget Rent-A-Car has sued the defendants for antitrust violations in two separate forums, Missouri and Nevada, and on December 11, 1975, Dollar-Rent-A-Car Systems, Inc. sued the defendants in the Northern District of California for antitrust violations.

While there may be many small claimants who would not be inclined to sue on their own behalf, this factor may be counterbalanced by the possibility of intervention under Fed.Rule 24 or joinder under Rule 20.[13]

Moreover, nothing in the record indicates that these claims against the defendants should be litigated in this forum as opposed to any other, particularly due to the fragmented and diversified factual issues involved, and at this time we are not aware of so many similar cases extant to justify concentration in this forum.[14] Finally, under 23(b)(3)(D), it is quite apparent from our discussion concerning the typicality requirement of 23(a)(3), and the predominance of individual issues under 23(b)(3) that a class action in this case could become entirely unmanageable and would not present an efficient method of adjudication. *See generally* 3B J. Moore *Federal Practice* ¶ 23.45[3]. Here, we face the prospect of separate minitrials for each class member and then, in turn, for each airport. *See William R. Holland v. The Goodyear Tire & Rubber Co.*, 1975–2 CCH Trade Cases ¶ 60,-522 (N.D.Ohio 1975); *San Antonio Telephone Co., Inc. v. American Telephone & Telegraph Co., supra*; *In re Hotel Telephone Charges, supra*; *Barnett, supra*.

We have, in addition, considered other factors enumerated in *Katz v. Carte Blanche Corp., supra*, and conclude that the class action mechanism could not be effectively utilized in this case.

**13.** The prevailing plaintiff in a Sherman Act suit may recover attorney fees in addition to treble damages, a significant incentive to initiating a separate antitrust action.

**14.** Consolidation for pre-trial discovery purposes may be available in any event. *See* 28 U.S.C. § 1407.